**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────────

**NAJIY-ULLAH AZIYZ,**

                                        **Plaintiff,**

        v.                                                          **1:22-cv-579**

**CAMECA, a Wisconsin Profit Corporation; AMETEK,**
**a Pennsylvania Profit Corporation; STEVEN TURNBULL,**
**individually and in his capacity as a manager;**
**ANNIE STROUD, individually and in her capacity as**
**a manager; and FABRICE LEDUIGOU, individually and**
**in his capacity as a manager,**

                                        **Defendants.**
─────────────────────────────────────────

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                          **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff Najiy-Ullah Aziyz, proceeding *pro se*, brings this diversity action against

Defendants Cameca Inc. ("Camaca"), Ametek Inc. ("Ametek"), Steven Turnbull

("Turnbull"), Annie Stroud ("Stroud"), and Fabrice LeDuigou ("LeDuigou")(collectively

"Defendants"). *See generally* First Am. Compl. ("FAC"), Dkt. No. 29-1.  Plaintiff's claims

arise because Cameca offered, and Plaintiff accepted, the Northeast Field Service

Engineer ("NFSE") position to be performed remotely from Plaintiff's home in New York

State; Camaca rescinded that offer after it learned of Plaintiff's 1991 felony conviction;

and then, the next day, reinstated the offer and set August 10, 2020 as Plaintiff's start

and orientation date. *See id.*  Plaintiff contends that because Cameca failed to provide

him by August 10 with the necessary apparatuses (company car, computer, phone, and

1

email) to participate in the orientation and perform his duties, Defendants "reneged on plaintiff's reinstatement job [sic] offer and orientation solely due to Plaintiff's 1991 felony conviction," effectively denying him employment.  *Id.* at ¶¶ 52, 53.

Plaintiff brings claims that he labels as: (1) "Violation of New York Human Rights Law (N.Y. Exec. Law § 292 et seq.)" (Count I); (2) "Defendants' Breach of Contract" (Count II); (3) "Breach of Promissory Estoppel" (Count III), (4) "Breach of Contract (Confidentiality of Hiring Data)" (Count IV);  (5) "Breach of Good Faith and Fair Dealings" (Count V); (6) "Fraud, Deceit, and Negligent Misrepresentation" (Count VI); and (7) "Promissory Fraud Misrepresentation" (Count VII). *See* FAC.  Each claim is brought against all Defendants. *Id.*

Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that the Court lacks personal jurisdiction over each defendant, and pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the FAC fails to state claims upon which relief may be granted. *See* Dkt. No. 31.  Plaintiff opposes the motion, *see* Dkt. No. 33, and Defendants file a Reply. *See* Dkt. No. 34.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II.    BACKGROUND

### a.  Prior Litigation

This is Plaintiff's second *pro se* action filed in federal court concerning the Camaca NFSE position.  In the first action, brought in the United States District Court for the Western District of Wisconsin against all defendants named here except Ametek (Cameca's parent company), Plaintiff claimed that Cameca violated federal

antidiscrimination laws,[1] the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)(A) ("FCRA"), and Wisconsin state common law by failing to make him a "good faith" offer of employment after discovering that he had a felony conviction. *See 'Aziyz v. Cameca*, No. 20-CV-896-WMC, 2021 WL 3471583, at *1 (W.D. Wis. Aug. 6, 2021), *aff'd sub nom. Aziyz v. Cameca, Inc.*, No. 21-2550, 2022 WL 354444 (7th Cir. Feb. 7, 2022), *reh'g denied,* No. 21-2550, 2022 WL 727638 (7th Cir. Mar. 10, 2022).

There, as in the instant case, on July 20, 2020 Camaca offered Plaintiff the NFSE position. *See id.* at *1.  Plaintiff accepted the position the same day by sending a signed copy of the offer letter to Stroud, Cameca's Human Resource Manager.  *Id.*  The parties agreed that Plaintiff's first day at Cameca would be Monday, August 10, 2020, and on July 27, Cameca Service Manager LeDuigou emailed Plaintiff, stating that he was looking forward to him joining the team and informing him that Cameca would be providing him with a cellphone. *Id.*

"Cameca has a policy of considering applicants with a criminal history for employment. It also has a policy of conducting a '7-10 years background check' of its applicants. As part of its hiring process, Cameca hired a third-party vendor, HireRight, to conduct a background check" on Plaintiff.  *Id.*  "HireRight finalized its report on July 28, 2020. That same day, defendant Stroud sent [Plaintiff] a 'welcome aboard' email." *Id.*  "On or about August 6, 2020, however, Stroud called [Plaintiff] and told him that, in performing her own background investigation, she discovered that [Plaintiff] had a

---

[1]Plaintiff, who is black and was 52 years old at the time, alleged (1) disparate impact race discrimination under Title VII, and (2) disparate treatment age discrimination under the Age Discrimination in Employment Act. *See 'Aziyz v. Cameca*, No. 20-CV-896-WMC, 2021 WL 3471583, at *2 (W.D. Wis. Aug. 6, 2021), *aff'd sub nom. Aziyz v. Cameca, Inc.*, No. 21-2550, 2022 WL 354444 (7th Cir. Feb. 7, 2022), *reh'g denied,* No. 21-2550, 2022 WL 727638 (7th Cir. Mar. 10, 2022).

felony conviction.  Stroud told [Plaintiff] that she had shared this information with
LeDuigou, who became 'upset' that [Plaintiff] had not disclosed this information during
the interview process. Stroud told [Plaintiff] that she would have to report the conviction
to Cameca's corporate office and rescind the job offer." *Id.* at *2.  Nevertheless, on
August 7, 2020, Stroud called Plaintiff and told him that: "(1) she was wrong for sharing
the information about his conviction with LeDuigou; and (2) Cameca actually wished to
proceed with [Plaintiff's] orientation on August 10.  Stroud also attempted to set up a
conference call with LeDuigou and [Plaintiff] to talk, but the parties were unable to find a
time that worked." *Id.*  That same day, Turnbull, Cameca's Vice President of Human
Resources, "also called [Plaintiff], apologized for how things had been handled, and
explained how the company had discovered [Plaintiff's] felony conviction. According to
Turnbull, after receiving HireRight's background check, Stroud noticed that [Plaintiff's]
age and graduation date did not coincide with his work history, so she followed up with
LeDuigou to see what he had learned during [Plaintiff's] interview." *Id.* "Turnbull told
[Plaintiff] that it was LeDuigou (not Stroud) who then conducted the internet search that
led to the discovery of the conviction. Turnbull further admitted during this conversation
that Stroud, LeDuigou, and he 'acted discriminatory towards Plaintiff based on race and
age.'" *Id.* (quoting Am. Compl. ¶ 98)). "Finally, later that same day, Turnbull emailed
[Plaintiff] and said he was looking forward to him starting with Cameca." *Id.*

   "The next day, August 8, [Plaintiff] emailed Turnbull and asked (1) how he could
'ensure that I will not be targeted by [LeDuigou]' and (2) whether there were any other
managers or departments for whom he could work." *Id.*  "Turnbull responded the
following day, assuring [Plaintiff] that Cameca maintained a fair working environment

and LeDuigou had been reminded of and confirmed that he would comply with Cameca's anti-discrimination policies. Turnbull also emphasized that Cameca's 'good faith and commitment to the Code of Ethics [contained in the employee handbook] is evidenced by our decision to move forward to hire you after being informed of your past criminal convictions.'" *Id.* (quoting Am. Compl, ¶104).

"On August 10, [Plaintiff's] planned start date, Turnbull again emailed him to ask whether he had received the previous email and intended to report to work that day." *Id.* "[Plaintiff] responded that he did not intend to join Cameca because it had not assured him that he would not be a target of retaliation or that the job offer was in good faith. Cameca then allegedly filled the Field Service Engineer job with someone who was 'sufficiently younger' than [Plaintiff]." *Id.*

Defendants moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), contending primarily that none of Plaintiff's federal claims were actionable because, as Plaintiff admitted in his amended complaint, Cameca offered him a job and he rejected it. *Id.* The District Court agreed, holding: "Because the admissions in the amended complaint disprove plaintiff's allegations of unlawful discrimination or violation of his rights under the FCRA, the court will dismiss his federal claims under Rule 12(b)(6) and decline to exercise supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice for lack of jurisdiction." *Id.*; *see id.,* at *4–6.

On appeal, the United States Court of Appeals for the Seventh Circuit affirmed the District Court's decision, finding that "[e]ven taking Aziyz's factual allegations at face value, he has failed to allege that Cameca took any adverse employment action against him." *Aziyz,* 2022 WL 354444, at *1. "Aziyz's discrimination claims fail because his

allegations show that he did not suffer an adverse employment action, which is an essential element of his race- and age-discrimination claims." *Id.*, at *2. The Seventh Circuit found that even though Plaintiff insisted that Cameca had no intention of following through on its job offer after discovering his criminal conviction, "speculative future adverse action is not adverse action." *Id.* (citations omitted). "Aziyz's own allegations show that he did not confirm his willingness to start work but instead rejected Cameca's job offer on the morning his orientation was to begin." *Id.* The Seventh Circuit held that "Aziyz's rejection of the job offer also defeats any argument that Cameca's failure to send the laptop and phone showed that it did not intend to follow through on the job offer. Moreover, in his email rejecting the job offer, Aziyz did not identify the lack of a laptop computer or phone as a basis for his refusal to start work, nor did he allege that he ever told Cameca during the numerous conversations leading up to his orientation that he had not received them." *Id.*

Likewise, the Seventh Circuit found that "the district court correctly reasoned that the temporary rescission of the offer does not satisfy the [Fair Credit Reporting Act's] definition of 'adverse action,' which requires 'a denial of employment' or a 'decision for employment purposes that adversely affects any ... prospective employee.'" *Id.*, at *3 (quoting 15 U.S.C. § 1681a(k)(1)(B)(ii)). The Circuit Court held: "Cameca did not deny Aziyz employment or otherwise make an employment decision that harmed him. We also agree with the district court that even if there had been a conceivable harm under the Act, it would have stemmed from the independent investigation and not, as is required, from HireRight's report. Aziyz alleges in his amended complaint that the background report did *not* reveal his criminal conviction. The basis of Cameca's

6

temporary rescission was the company's additional, independent internet investigation, not the report itself." *Id.* (emphasis in original).

### b.  Instant Action

In the instant action, Plaintiff alleges that on July 14, 2020, he interviewed with LeDuigou for the Cameca NFSE position, which was to be performed remotely from New York State, where Plaintiff resided. FAC ¶¶ 13, 19.  On July 20, 2020, Plaintiff "received [a] formal offer letter from Stroud," which he accepted the same day by forwarding a signed copy of the offer letter to Stroud. *Id.* ¶¶ 17-18.  Plaintiff asserts:

> Per Plaintiff's Job Offer - required the first day of employment, the position pay rate of $1,634.62 per week ($85,000 annual base), company vehicle, eligibility for the Sales Incentive Program, benefits program, eligibility for (15) paid PTO days annually, eligibility for (9) Scheduled Holidays as well as three floating holidays, and eligibility for 401k Plan. Additionally, required the first day of employment, a company computer, company phone, and company email.

*Id.* ¶ 27.  On the same day, Plaintiff "informed Stroud that he could not resign from [his then-current employment position as a Senior Field Service Engineer] until he had satisfactory [sic] passed the background check and pre-employment drug screen." *Id.* ¶¶ 22-23.

On July 28, 2020, Plaintiff received an "all clear and welcome aboard" email from Stroud, prompting Plaintiff to resign from his then-current position. *Id.* ¶¶ 24-25. "Plaintiff's amended first day at work and orientation was rescheduled for Monday, August 10th, 2020 at Cameca." *Id.* ¶ 26.  Also on July 28, 2020, Stroud requested Plaintiff complete certain employment-related documentation and forms, which Plaintiff completed and submitted. *Id.* ¶¶ 28-29.

On July 30, 2020, Stroud asked Plaintiff if he had a preference for his email address at work, and informed Plaintiff that his "company computer and company phone [would] be mailed to his home for work and participation in orientation." *Id.* ¶ 31. Also on July 30, 2020, "LeDuigou informed Plaintiff that his company car and company phone [would] be delivered to his home for work and participation in orientation." *Id.* ¶ 32. "Ametek's employee handbook, 'Code of Ethics and Business Conduct Handbook' (hereinafter 'Code') was issued to the Plaintiff." *Id.* ¶ 35.

On August 6, 2020, Stroud "discovered criminal information about the Plaintiff,"[2] which she disclosed to LeDuigou, who would have been Plaintiff's direct supervisor. *See id.* ¶¶ 38-39.  Plaintiff contends that LeDuigou "was upset with Plaintiff due to the nature of the criminal conviction." *Id.* ¶ 39.  He further contends that "Stroud and LeDuigou planned the withdrawal of Plaintiff's job offer solely due to Plaintiff's criminal conviction." *Id.* ¶ 40. He asserts that on August 6, 2020, "Stroud rescinded Plaintiff's job offer solely due to his criminal conviction." *Id.* ¶ 41.  He also asserts that on August 6, 2020, "Defendants stopped all preparations for Plaintiff's first day of work and orientation to be held on August 10, 2020."  *Id.* ¶ 43.

Nevertheless, Plaintiff contends that on August 6, 2020, "Stroud consulted with Ametek regarding the recession [sic] of Plaintiff's job offer on the basis of his criminal conviction," *id.* ¶ 44, and on August 7, 2020, "after consulting with Ametek, Defendants reinstated plaintiff's job offer and resumed preparations for orientation to be held on Aug. 10, 2020." *Id.*  ¶ 47.  On August 7, 2020, "Plaintiff confirmed his acceptance for the Northeast Field Service position." *Id.*  ¶ 48.  On the same day, Plaintiff requested a

---

[2] The FAC indicates that Plaintiff has a 1991 felony conviction, FAC ¶¶ 42, 52,111, for which he appears to have been incarcerated and eventually paroled.  *See id.* ¶ 63

meeting with LeDuigou and Stroud "regarding employment matters," but LeDuigou declined to speak or meet with him. *Id.* ¶¶ 49-50.  On August 8, 2020, "Plaintiff again confirmed his acceptance of the NFSE position and raised concerns regarding his employment to Turnbull, H.R. Vice President." *Id.* ¶ 51.  Plaintiff communicated via phone and email with Turnbull "specifically to ask about rumors regarding many employees not wanting to work with Plaintiff because of his criminal history. Plaintiff also asked, if the rumors were true, can he work under another manager or in another division, as Ametek have [sic] over (6) subsidiaries in New York state." *Id.* ¶ 141. "Turnbull responded that those rumors are unfounded, and further expressed Cameca [sic] is excited about Plaintiff joining the team. In fact, Turnbull express [sic] to Plaintiff how Ametek maintains a working environment that values diversity and protects the right of each employee to fair and equitable treatment. Turnbull assured Plaintiff of [sic] any actions that contradict this policy would be subject to corrective actions." *Id.* Plaintiff contends, however, that "Defendants intentionally concealed material facts from Plaintiff, including, without limitation, that his reinstatement job [sic] was merely pretexted to establish an at-will relationship only to deny Plaintiff the required apparatus[3] needed for him to perform his job. Defendants concealed their malice motives [sic], to deny plaintiff employment solely due to his criminal conviction, a statutory [sic] prohibited act." *Id.*

Plaintiff asserts that "[o]n Aug. 10, 2020, Defendants harden [sic] their position on not hiring a convicted felon and reneged on plaintiff's reinstatement [sic] job offer and orientation solely due to Plaintiff's 1991 felony conviction, by their failure to provide

---

[3] Plaintiff uses both "apparatus" and "apparatuses" when referring to items needed to participate in the orientation and to perform his job duties.  *See, generally*, FAC.

Plaintiff with the required apparatus to participate in orientation, and the opportunity to satisfactory [sic] perform his duty as the Northeast Field Service Engineer." *Id.* ¶ 52. Plaintiff contends that because Cameca failed to provide him by his start date the apparatuses necessary to participate in the orientation and perform his position remotely, he was denied employment due to his prior felony conviction. *See id.* ¶ 53 ("Defendants' act of [f]ailing to provide Plaintiff with the required apparatus to participate in orientation, and the opportunity to satisfactory [sic] perform his duty as the Northeast Field Service Engineer denied Plaintiff employment.").  Plaintiff asserts that by this omission, Defendants violated the NYSHRL, breached Plaintiff's contract, and committed various common law torts. *See generally*, FAC.

## III.   DISCUSSION

### a.  Fed. R. Civ. P. 12(b)(2) Motion

There is no dispute that all defendants are domiciled outside New York State.[4] Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds that the Court lacks personal jurisdiction over each defendant.

### 1.  Standard of Review

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d

---

[4] The FAC alleges that Ametek is a Pennsylvania corporation with its principal place of the business at 1100 Cassatt Road, Berwyn, Pennsylvania, FAC ¶ 5; that Cameca is a Wisconsin corporation with its principal place of business at 5470 Nobel Dr., Fitchburg, Wisconsin 53711, *id.* ¶ 6; and that Turnbull, Stroud, and LeDuigou each reside in Wisconsin. *See id.* ¶¶ 8-10. However, LeDuigou submits a declaration indicating that he resides in Reston, Virginia, *see* Dkt. No. 31-3, ¶ 2, and Turnbull submits a declaration indicating that he resides in Ridgewood, New Jersey, Dkt. No. 31-4, ¶ 2.  Plaintiff has not rebutted LeDuigou and Turnbull's attestations as to their residences, but submits declarations wherein he asserts that Stroud and Turnbull are each "citizen[s] of another state." Dkt. Nos. 33-6, 33-7.

204, 206 (2d Cir. 2003) (per curiam)). "If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation[s], in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)(per curiam)(citation omitted); *see Yak v. BiggerPockets, L.L.C.*, 2022 WL 67740, at *1 (2d Cir. Jan. 7, 2022)(Summary Oder)("Prior to trial, . . . when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.")(citing *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). "Although a plaintiff must eventually establish personal jurisdiction by a preponderance of the evidence, when addressing the issue based on pleadings and affidavits, the Court must accept the allegations in the plaintiff's complaint and affidavits as true, and all doubts must be resolved in the plaintiff's favor, notwithstanding any controverting presentation by the moving party." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021)(citing *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993)).  "A plaintiff, however, 'must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone.'" *Id.* (quoting *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014), in turn quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998), and citing *Penguin*, 609 F.3d at 34–35 (stating that a prima facie showing of jurisdiction "entails making legally sufficient allegations of

jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." (cleaned up)).

"A plaintiff must carry his burden with respect to each defendant individually." *Id.* at 396 (citations omitted). "To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F.Supp.3d 111, 135 (S.D.N.Y. 2021).   "When personal jurisdiction is predicated on specific jurisdiction, a plaintiff must establish a prima facie case of jurisdiction as to each claim." *Berdeaux*, 561 F. Supp. 3d at 396 (citing *Ainbinder v. Potter*, 282 F. Supp. 2d 180, 184 (S.D.N.Y. 2003) ("Because this is a matter of specific jurisdiction, each cause of action must be analyzed separately."); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted.")(emphasis in original)).

"Personal jurisdiction over a foreign defendant involves a two-step inquiry. First, courts look to the law of the forum state to determine whether jurisdiction exists.  Where the forum state's jurisdictional requirements are satisfied, the court must then consider whether the district court's exercise of personal jurisdiction over a foreign defendant comports with the due process protections established under the United States Constitution." *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 573 (2d Cir. 2020) (cleaned up); *see Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-CV-4660-GHW, 2021 WL 1299489, at *4 (S.D.N.Y. Apr. 7, 2021).

The New York State long-arm statute provides for general jurisdiction under Section 301 of the New York Civil Practice Law and Rules ("C.P.L.R."), and for specific

jurisdiction under Section 302(a).  Plaintiff asserts that personal jurisdiction may be

obtained over Defendants pursuant to C.P.L.R. §§ 302(a)(1) and (a)(3).  *See* Pl. Mem.

L. in Opp. ("PI MOL"), Dkt. No. 33-1 at pp. 5-10.

> CPLR § 302(a) provides in pertinent part:
>
> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ...
>
> (1) transacts any business within the state ...; or
>
> * * *
>
> (3) commits a tortious action without the state causing injury to a person or property within the state ... if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenues from interstate or international commerce.

C.P.L.R. § 302(a).

"'To establish personal jurisdiction over a defendant, due process requires a

plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant

forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances.'"

*Kumar v. Opera Sols. OPCO, LLC*, No. 1:20-CV-6824-GHW, 2021 WL 4442832, at *6

(S.D.N.Y. Sept. 28, 2021)(quoting *In re Terrorist Attacks*, 714 F.3d at 673, in turn citing

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "'To determine whether a

defendant has the necessary 'minimum contacts,' a distinction is made between

'specific' and 'general' personal jurisdiction.'" *Id.* (quoting *In re Terrorist Attacks on Sept.*

*11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).  "Courts 'may assert general personal

jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which the suit is brought 'are so constant and pervasive so as to render it essentially at home in the forum State.'" *Id*. (quoting *Waldman v. Palestine Liberation Org.,* 835 F.3d 317, 331 (2d Cir. 2016), in turn quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).   "Specific jurisdiction, by contrast, 'depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* (quoting *In re Terrorist Attacks*, 714 F.3d at 673, in turn quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

### 2.  C.P.L.R. § 302(a)(1)

"To establish personal jurisdiction under Section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan*, 52 N.Y.2d at 273); *see JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844 (CS), 2019 WL 2578306, at *6 (S.D.N.Y. June 24, 2019), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020)("A finding of specific jurisdiction under N.Y. C.P.L.R § 302(a)(1) requires the Court to determine that 'the defendant purposefully directed his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities.'")(quoting *In re Terrorist Attacks on Sept. 11, 2001*, 440 F. Supp. 2d 281, 284 (S.D.N.Y. 2006) (alteration in original))(interior quotation marks and citation omitted).

"CPLR 302 (a) is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Daniel B. Katz & Assoc. Corp. v Midland Rushmore, LLC*, No. 2011-01834, 4554/10, 937 N.Y.S.2d 236, 2011 N.Y. Slip Op. 09584, 2, 2011 WL 6825731 (N.Y.A.D., Dec. 27, 2011)(cleaned up).

"Determining whether a non-domiciliary is transacting business in New York is a fact-based determination." *Lear*, 2021 WL 1299489, at 6 (citing *Paterno*, 24 N.Y.3d at 376). Whether a party has transacted business in New York depends upon the "totality of the circumstances concerning the party's interactions with and activities within the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999). "'A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws.'" *Lear*, 2021 WL 1299489, at *5 (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)(internal quotation marks and citations omitted)). "'The New York Court of Appeals has explained that 'the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York,' thereby 'invoking the benefits and protections of its laws.'" *Id.* (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted)).

"Purposeful activities are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws.... More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376 (NY 2014) (cleaned up); *see Yih*, 815 F. App'x at 574 ("Under New York law, . . . '[m]ore than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business.'")(quoting *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 53 N.Y.S.3d 16, 18 (N.Y. App. Div., 2017), in turn quoting *Paterno*, 24 N.Y.3d at 376)).  "The lack of an in-state physical presence is not dispositive of the question whether a non-domiciliary is transacting business in New York." *Paterno*, 24 N.Y.3d at 376.  "The exercise of long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(1) can be warranted when an out of state actor projects itself into New York to conduct business transactions by electronic and telephonic means." *Lear*, 2021 WL 1299489, at *5 (citing *Paterno*, 24 N.Y.3d at 376). "At a minimum, the defendant 'must, on his or her own initiative ... project himself or herself into the state to engage in a sustained and substantial transaction of business." *Atwal*, 2023 WL 3063450, at *6 (quoting *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67 (2d Cir. 2017) (internal quotation marks and citations omitted).

> "Although it is impossible to precisely fix those acts that constitute a transaction of business, ... it is the quality of the defendants' New York contacts that is the primary consideration." *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). This emphasis on "a certain quality, rather than a specific quantity, of contacts with the forum," *U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 (S.D.N.Y. 1993), means that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006) (internal quotation marks omitted).

*JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844 (CS), 2019 WL 2578306, at *6 (S.D.N.Y. June 24, 2019), *aff'd sub nom. Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571 (2d Cir. 2020).

"If the first prong of the test for jurisdiction under C.P.L.R. 302(a)(1) is satisfied, the court must then inquire whether the plaintiff's claims arise from that transaction." *Atwal*, 2023 WL 3063450, at *6 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)).  "A suit will be deemed to have arisen out of a party's activities in New York 'when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted.'" *Id.* (quoting *Sole Resort,* 450 F.3d at 103) (internal quotations marks and citations omitted).

### Plaintiff's Arguments

Plaintiff argues that Cameca and Ametek transacted business within New York State by soliciting and employing New York residents to manufacture, sell, and service their high-performance analytic instruments. *See* Pl. MOL at 6 (citing Pl. Ex. A; Pl. Ex. B; Pl. Ex. C; Pl. Ex. D; Pl. Ex. E).  Plaintiff alleges that Cameca is a Wisconsin corporation and wholly owned subsidiary of Ametek, FAC at ¶ 6; that Ametek is a Pennsylvania corporation that controls every aspect of operation at Cameca, including but not limited to, hiring and terminating its employees, FAC at ¶¶ 5, 56; and he contends that Cameca and Ametek both share the same link to solicit New York residents for employment. Pl. Ex. A at ¶ 7; Pl. Ex. B at ¶ 7; Pl. Ex. A1.  Plaintiff also alleges that Ametek is the parent company to at least six (6) subsidiary companies in New York State, Pl. Ex. B at ¶ 8, and that Cameca has at least two (2) companies which

sell, and provide maintenance services for, its high-performance analytical instruments. Pl. Ex. B at ¶ 8. He asserts that "it is unopposed by Defendants with affidavit (or otherwise) that Cameca and Ametek transact business in New York State, including but not limited to, soliciting and employing New York State residents to manufacture, sale [sic], and provide services to Cameca's and Ametek's high-performance analytic instruments." Pl. MOL at 7 (citing Pl. Ex. A at ¶¶ 3-8; Pl. Ex. B at ¶¶ 3-8); *see id*. at 14 (same). Plaintiff also asserts that exercising personal jurisdiction over Cameca and Ametek comports with due process because these defendants have sufficient minimum contacts with New York State through their corporate activities, *see* Pl. MOL at 11-14, and that under the circumstances it would be reasonable to assert personal jurisdiction over them. *Id*. p. 14.

Plaintiff's arguments regarding the transaction of business in New York by Turnbull, Stroud, and LeDuigou (collectively, "Individual Defendants") are more general and amount to improper group pleading. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F.Supp.3d at 135. Plaintiff contends that "Defendants regularly solicit[] business, … and derive[] substantial revenue from goods used or consumed and services rendered in the State of New York," Pl. MOL at 2, and that "Defendants transacted business within New York State by soliciting and employing its residents to service its high-performance analytical instruments." *Id.* at 7. Plaintiff maintains that Defendants' "continual communication with Plaintiff into the state of New York expresses Defendants['] solicitation to create a[n] employer-employee relationship." Pl. MOL at 7. He further contends that "[t]he discriminatory actions under NYSHRL, and fraudulent misrepresentation arise from Defendants' 'transacted business' within New

York State by soliciting and employing its residents to service its high-performance analytic instruments." *Id.* (citing FAC). Thus, Plaintiff maintains, "Defendants purposely availed themselves by soliciting and employing New York residents to manufacture, sale [sic], and provide services to their product line of high-performance analytic instruments, and thereby invoked the benefits and protection of its laws." *Id.* (citing Pl. Ex. A; Pl. Ex. B).  Plaintiff does not present due process arguments specifically directed to the Individual Defendants.  *See* Pl. MOL at pp. 11-14.

### Analysis - Cameca and Ametek

On July 14, 2020, "Plaintiff interviewed with LeDuigou for the Northeast Field Service Engineer position at Cameca." FAC ¶ 13.  Plaintiff indicates this interview was conducted by telephone while Plaintiff was in New York.  *See* Pl. MOL, at 6.  There are no allegations indicating how it was that Plaintiff learned of the position and applied for it.  Plaintiff's contention that "Defendants" solicited potential employees from New York State appears to be based on Cameca's and Ametek's online posting of open employment positions, which Plaintiff describes as Cameca's and Ametek's "career link."  *See* Pl. MOL at 4 ("Cameca and Ametek transact business in New York State by the acts of soliciting and employing New York residents for the manufacturing, sales, and service of their product line."); 6 ("Cameca and Ametek transact business within New York State by soliciting and employing New York residents to the manufacturing, sales, and services of its high-performance analytic instrument."); Pl. Ex. A, ¶¶ 6-7 ("Cameca solicits and employ [sic] New York residents to sale [sic] and service their product line of high-performance analytical instrumentation throughout United States, including New York State.  Cameca's 'career' link is directly linked with Ametek to solicit

19

and employ New York residents.")(citing Pl. Ex. A1); Pl. Ex. B, ¶¶ 6-7 ("Ametek solicit

[sic] and employ [sic] New York residents to manufacture, sale [sic], and service their

product line of advanced analytical instrumentation throughout United States, including

New York State. Ametek's 'career' link is directly linked with Cameca to solicit and

employ New York residents.")(citing Pl. Ex. A1).  Plaintiff's Exhibit A1 is a printout of an

online posting for "careers" with Cameca, *see* Pl. Ex. A1, CM/ECF p. 1, and the results

of a search for "New York" jobs on Ametek's employment openings database. *See id.*

CM/ECF pp. 3-6.

> [T]he courts have identified a spectrum of cases involving a defendant's use
> of the internet. At one end are cases where the defendant makes
> information available on what is essentially a "passive" web site. This use of
> the internet has been analogized to an advertisement in a nationally-
> available magazine or newspaper, and does not without more justify the
> exercise of jurisdiction over the defendant. *See* [*K.C.P.L., Inc. v. Nash,* No.
> 98 Civ. 3773, 1998 WL 823657, at *4-*5 (S.D.N.Y.1998)]; *Hearst Corp. v.
> Goldberger,* No. 96 Civ. 3620, 1997 WL 97097, at *10 (S.D.N.Y. Feb. 26,
> 1997); *see also* [*Zippo Mfg. Co. v. Zippo Dot Com,* 952 F. Supp. 1119, 1123
> (W.D.Pa.1997)]. At the other end of the spectrum are cases in which the
> defendant clearly does business over the internet, such as where it
> knowingly and repeatedly transmits computer files to customers in other
> states. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996).
> Finally, occupying the middle ground are cases in which the defendant
> maintains an interactive web site which permits the exchange of information
> between users in another state and the defendant, which depending on the
> level and nature of the exchange may be a basis for jurisdiction. *See
> American Homecare Fed. Inc. v. Paragon Scientific Corp.,* 27 F.Supp.2d
> 109, 113 (D.Conn.1998); *Zippo,* 952 F. Supp. at 1124.

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

The first page of Plaintiff's Exhibit A1 shows links for interested individuals to

"contact us" and "sign up for [a] newsletter."  *Id.* at CM/ECF p. 1.   If this website merely

imparts information but does not allow transactions relative to employment, then this

would be insufficient to support personal jurisdiction under C.P.L.R. 302(a)(1). *See*

20

*Paterno,* 24 N.Y.3d at 377-78 ("Passive websites . . . which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction. Thus, … the mere fact that [plaintiff] viewed [the websites] in New York is insufficient to establish CPLR 302(a)(1) personal jurisdiction over defendants.")(citations omitted); *cf. V'Soske, Inc. v. Vsoske.com,* No. 00 Civ. 6099, 2001 WL 546567, at *4 & n. 3 (S.D.N.Y. May 23, 2001) (stating that the mere possibility of requesting information about products is insufficient to establish personal jurisdiction).

Further, Plaintiff's Exhibit A1 references Cameca employment positions in New York State, in other states within the United States, and in other countries. *See* Pl. Exhibit A1.  This tends to negate a conclusion that Cameca and Ametek "[sought] out and initiate contact with New York" by directing the employment advertisement "at New York, rather than the world with access to the web." *Lear*, 2021 WL 1299489, at *8; *cf. Hsin Ten Enter, USA, Inc. v. Clark Enters.,* 138 F.Supp.2d 449, 456 (S.D.N.Y. 2000) ("[P]ersonal jurisdiction over a defendant is not appropriate simply because the defendant maintains a website which residents of New York may visit.")(citing *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 29 (2d Cir. 1997)).

 But Plaintiff contends that Cameca's and Ametek's websites are "relatively interactive." *See* Pl. Ex. A ¶ 12; Pl. Ex. B ¶ 12.  Plaintiff's declarations indicate that the websites to which he refers allow "New York residents, government and university labs as well as leading high-tech industrial companies to apply for services and call or email the Company." *Id.*  Construing the pleadings and declarations in the light most favorable to Plaintiff, and resolving all doubts in his favor, the link on Plaintiff's Exhibit 1A plausibly allows interested job applicants to ask questions related to available employment and,

potentially, get the ball rolling for an employment application.  It is also a reasonable inference that Plaintiff learned of and applied for the NFSE position by viewing this website while he was in New York. Thus, Plaintiff has presented a prima facie basis to conclude that Cameca and Ametek transacted business in New York through the solicitation of New York residents for employment through this website.  Assuming that to be true, Cameca's and Ametek's maintenance of this website supplies a connection between New York and the underlying controversy.

Furthermore, although "courts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302(a)(1) if [a] contract . . . was negotiated solely by mail, telephone, and fax without any New York presence by the defendant,'" *Lear*, 2021 WL 1299489, at *7 (citations omitted), here the facts as alleged by Plaintiff indicate that both Cameca and Ametek have a presence in New York through their sales and service employees in the state. *See* Pl. Ex. A ¶ 8; Pl. Ex. B ¶¶ 5-8.  And contrary to the employment contract negotiated in *Lear*, the prospective employment agreement at issue here was intended to be performed in New York.  Considering the totality of the circumstances, Plaintiff has presented a prima facie case that Cameca and Ametek transacted business in New York for C.P.L.R. 302(a)(1) purposes by soliciting New York residents for employment.

Plaintiff has also presented facts supporting a prima facie basis to conclude that his claims arose from this transaction of business.  There exists an articulable nexus between Cameca's and Ametek's solicitation of employees in New York and Plaintiff's claims. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)("As for the second part of [Section 302(a)(1)'s] test, a suit will be deemed to have arisen out of a

party's activities in New York if there is an articulable nexus, or a substantial

relationship, between the claim asserted and the actions that occurred in New York.");

*see also* Def. Reply, at 8 (Plaintiffs' "claims do not arise out of Defendants' supposedly

general business activities. Rather, they arise out of his alleged job offer.").  Considering

the totality of circumstances, Plaintiff has presented a prima facie case supporting a

basis for the Court to exercise personal jurisdiction over Cameca and Ametek pursuant

to Section 302(a)(1).

Finally, Plaintiff has presented a prima facie basis to conclude that the exercise

of personal jurisdiction over Cameca and Ametek comports with due process.

Accepting Plaintiff's allegations as true for purposes of this motion, and drawing all

inferences in Plaintiff's favor, both of these corporations seemingly have sufficient

minimum contacts with New York State such that they should reasonably anticipate

being haled into court over claims arising from the solicitation of individuals for

employment in New York. *See State v. Vayu, Inc.*, 39 N.Y.3d 330, 337, 206 N.E.3d

1236, 1241–42 (N.Y. 2023); *Manning v. Erhardt + Leimer, Inc.*, No. 17-CV-348, 2020

WL 759656, at *9 (W.D.N.Y. Feb. 7, 2020).  Under the circumstances, the prospect of

having to defend an employment-related and/or contract-related suit in New York

comports with traditional notions of fair play and substantial justice. *See Vayu,* 39

N.Y.3d at 337, 206 N.E.3d at 1241–42; *Manning*, 2020 WL 759656, at *9.  Moreover,

"[b]ecause the New York long-arm statute is more restrictive than the federal due

process requirements, by virtue of satisfying the long-arm statute the minimum contacts

and reasonableness requirements of due process have similarly been met." *Chatwal*

*Hotels & Resorts LLC v. Dollywood Co.,* 90 F.Supp.3d 97, 107 (S.D.N.Y. 2015); *accord*

*Peterson v. Islamic Republic of Iran,* 2013 WL 1155576, at *15 (S.D.N.Y. Mar. 13, 2013) ("New York law requires a greater showing of minimum contacts than would be required by the Due Process Clause alone."); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 825482, *15 (S.D.N.Y.), adopted, 2017 WL 1321007 (S.D.N.Y. 2017) ("[c]ompliance with New York's long-arm statute usually - though not invariably - results in compliance with the constitutional standard as well").

Accordingly, Plaintiff has presented a prima facie basis for the Court to exercise personal jurisdiction over Cameca and Ametek pursuant to C.P.L.R. Section 302(a)(1).

### Analysis - Individual Defendants

However, even accepting Plaintiff's allegations as true and drawing reasonable inferences on his behalf, the Individual Defendants' contacts with Plaintiff do not amount to purposeful activities sufficient to establish that these defendants availed themselves of the privilege of conducting activities within New York State. *Paterno*, 24 N.Y.3d at 376.  There are no specific allegations indicating that the Individual Defendants individually projected themselves into New York to solicit Plaintiff, or any other New York resident, for employment.  *See Atwal*, 2023 WL 3063450, at *6 ("At a minimum, the defendant must, on his or her own initiative ... project himself or herself into the state to engage in a sustained and substantial transaction of business.").  Plaintiff's declarations concerning the Individual Defendants indicate that they each allegedly[5] solicited business in New York "by making phone calls to customers or publishing advertisements in the State of New York," Pl. Exs. C ¶ 5; D ¶ 6; E ¶ 6, but these

---

[5] Defendants challenge Plaintiff's declarations concerning Defendants' conduct because Plaintiff was never employed by Cameca and thus lacks personal knowledge as to the basis of his contentions. Nevertheless, the Court considers the contentions for the purpose of determining whether Plaintiff has stated a prima facie case supporting personal jurisdiction.

allegations do not support the contention that the Individual Defendants solicited Plaintiff or any other New York resident for purposes of employment.  Furthermore, Plaintiff's claims do not arise out of the sale by the Individual Defendants of a product or services, or from the content of published advertisements for products or services.  Thus, these contentions do not support the second prong of the C.P.L.R. 302(a)(1) analysis as pertaining the Individual Defendants. .

Rather, the allegations indicate that the Individual Defendants each became involved with Plaintiff's prospective employment through his interview and with matters occurring thereafter. The allegations do not indicate that any of the Individual Defendants reached into New York to solicit Plaintiff, or any other New Yorker, for employment. Indeed, there is no allegation that any of the Individual Defendants had any contact with Plaintiff before his interview, or that any of the Individual Defendants had anything to do with the employment link in Plaintiff's Exhibit 1A.

Even assuming, *arguendo*, that the Individual Defendants' communications with Plaintiff during and after his interview amounted to the solicitation of Plaintiff for employment, these defendants' individual contacts with Plaintiff were too limited to amount to transaction of business in New York.  LeDuigou communicated with Plaintiff by telephone on July 14, 2020 for the interview, Pl. MOL at 6, and on July 30, 2020 to inform Plaintiff that his company car and company phone would be delivered to his home for work and participation in orientation. FAC ¶ 32. These limited contacts during the application process are insufficient to establish purposeful activities that amount to the transaction of business in New York. *See Paterno*, 24 N.Y.3d at 376 ("More than limited contacts are required for purposeful activities sufficient to establish that the non-

domiciliary transacted business in New York."); *Yih*, 815 F. App'x at 574 ("Under New York law, . . . more than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business.")(cleaned up).

The same conclusion applies to Turnbull.  Plaintiff's facts indicate that Turnbull communicated with Plaintiff on August 7 & 8, 2020 via phone and email regarding Plaintiff's concerns about accepting the NFSE position because Plaintiff had heard rumors that some Cameca employees did not want to work with him due to his because of his felony conviction. *See* Pl. MOL at 28 ("On August 7 & 8, 2020, Plaintiff, via phone and email, asked Turnbull about the then-current employment environment regarding his safety and the protection of his employment rights due to the rumors."); FAC ¶¶ 51, 141, 149.  Turnbull also, at some point, issued Plaintiff the Ametek/Cameca employee handbook and code of conduct.  FAC ¶ 108.  These limited contacts, which occurred after Plaintiff was interviewed and offered the NFSE position, are insufficient to establish purposeful activities in New York such to amount to the transaction of business in New York. *See Paterno*, 24 N.Y.3d at 376; *Yih*, 815 F. App'x at 574.  As discussed above, allegations that a defendant made telephone calls and sent emails to New York, without more, are generally insufficient to support jurisdiction.  Even accepting Plaintiff's allegations and declarations as true, and drawing reasonable inferences in his favor, he fails to establish a prima facie case that Turnbull transacted business in New York for purposes of C.P.L.R. § 302(a)(1).

Plaintiff had a few more communications with Stroud than he did with Turnbull and LeDuigou, but overall they do not establish purposeful activities such to amount to the transaction of business in New York.  On July 20, 2020, Stroud sent Plaintiff a

formal offer letter, FAC ¶ 17; on July 28, 2020, Stroud sent Plaintiff an "all clear and welcome aboard" email and requested that Plaintiff complete forms necessary for employment, FAC ¶ ¶ 24, 28; on July 30, 2020, Stroud asked Plaintiff whether he had a preference for an email address at work and informed him that his company computer and company phone would be mailed to his home from work, FAC ¶ ¶ 30-31; on August 6, 2020, Stroud rescinded Plaintiff's job offer, FAC ¶ 41; on August 7, 2020, Stroud reinstated Plaintiff's job offer at which time Plaintiff requested a meeting with Stroud and LeDuigou, FAC ¶ ¶ 47-49; and advised Plaintiff that LeDuigou declined to speak or meet with him. *See* FAC ¶ 49.  Again, these limited contacts are insufficient to establish purposeful activities such to amount to the transaction of business in New York. *See Paterno*, 24 N.Y.3d at 376; *Yih*, 815 F. App'x at 574.

Thus, Plaintiff fails to present a prima facie basis for the Court to exercise personal jurisdiction over the Individual Defendants pursuant to Section 302(a)(1). Further, even assuming that personal jurisdiction over the Individual Defendants would be proper pursuant to Section 302(a)(1), Plaintiff fails to present due process arguments directed specifically to the Individual Defendants.  Although the Court must construe *pro se* pleadings liberally and interpret them to raise the strongest arguments they suggest, *see Daniels v. Kijakazi*, No. 22-CV-6297 (LJL), 2023 WL 3901987, at *3 (S.D.N.Y. June 8, 2023)(citations omitted), "the Court's duty to liberally construe a plaintiff's [pleading] is not the equivalent of a duty to re-write it." *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018)(internal quotation marks and citation omitted).  Based on Plaintiff's submissions, he fails to present a prima facie basis to conclude that the exercise of personal jurisdiction over the Individual Defendants would not violate due process.

### 3.  C.P.L.R. § 302(a)(3)

"Under Section 302(a)(3), a court may exercise personal jurisdiction when a non-domiciliary commits a tortious act outside of New York State, but causes harm to someone in the state, if the conditions set forth in either Section 302(a)(3)(i) or (ii) are present." *Davey v. PK Benelux B.V.*, No. 20 CV 5726 (VB), 2021 WL 3501199, at *2 (S.D.N.Y. Aug. 6, 2021) (citing *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 325–26 (S.D.N.Y. 2013)). "Under both Section 302(a)(3)(i) and (ii), '(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York.'" *Id.* (quoting *Doe v. Del. State Police*, 939 F. Supp. 2d at 325–26).

Under Section 302(a)(3)(i), "a plaintiff must demonstrate one of four forms of in state activity by the defendant." *Id.* (citing *Doe v. Del. State Police*, 939 F. Supp. 2d at 326). "These activities include: (i) regularly doing business in the state, (ii) regularly soliciting business in the state, (iii) engaging in a persistent course of conduct in New York, or (iv) deriving substantial revenue from goods used or consumed or services rendered." *Id.* (citing *Doe v. Del. State Police*, 939 F. Supp. 2d at 326).  Section 302(a)(3)(ii) confers jurisdiction over a non-domiciliary when five elements are met:

> (1) The [plaintiff stated a colorable claim that the] defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, No. 21-2867, 2023 WL 4610772, at *3 (2d Cir. July 19, 2023)(quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006), in turn citing *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 713 N.Y.S.2d 304, 735 N.E.2d 883, 886 (NY 2000)).

### Analysis

Plaintiff appears to proceed under Section 302(a)(3)(ii).  *See* Pl. MOL at 8 ("Plaintiff relies on Section 302(a)(3)[.] The conferral of jurisdiction under this provision rests on five elements: (1) that defendant committed a tortious act outside the state; (2) that the cause of action arises from that act; (3) that the act caused injury to a person or property within the State; (4) that defendant expected or should reasonably have expected the act to have consequences in the State; and (5) that defendant derived substantial revenue from interstate or international commerce.")(internal quotation marks and citation omitted); *id.* at 9 ("Defendants expected or reasonably should have expected the act of discrimination to have consequence in New York State."). Accepting Plaintiff's allegations as true and drawing reasonable inferences in his favor, he has established a prima facie basis to conclude that each of the Section 302(a)(3)(ii) elements could be satisfied as to Cameca and Ametek.  He does not, however, direct his arguments to the Individual Defendants.  Critically, as to the fifth element, Plaintiff asserts that "Defendants derives [sic] substantial revenue from interstate and international commerce," Pl. MOL at 9, but in support of this proposition he cites only to his declarations pertaining to Cameca and Ametek. *Id.* (citing Pl. Ex. A, at ¶ 17; Pl. Ex. B, at ¶ 9).  Stroud, LeDuigou, and Turnbull have each submitted declarations attesting

that they "do not personally derive any revenue from interstate or international commerce." Def. Ex. A, at ¶ 9; Def. Ex. B, at ¶ 9; Def. Ex. C, at ¶ 8.  Plaintiff's lack of specific factual allegations relative to the Individual Defendants on this issue defeats any conclusion that personal jurisdiction may be obtained over the Individual Defendants pursuant to Section 302(a)(3)(ii).

Likewise, to the extent that Plaintiff proceeds under Section 302(a)(3)(i), he directs his factual contentions to Cameca and Ametek. *See* Pl. MOL at  9 ("Here, Defendants regularly do business in New York State and solicit business in New York State.")(citing Pl. Ex. A, at ¶¶ 8-9, 16; Pl. Ex. B, at ¶¶ 8-9, 18).  Even accepting Plaintiff's allegations as true and drawing reasonable inferences on his behalf, he fails to present a prima case that any of the Individual Defendants (i) regularly do business in New York State, (ii) regularly solicit business in New York State, (iii) engage in a persistent course of conduct in New York State, or (iv) derive substantial revenue from goods used or consumed or services rendered in New York State.

Further, even if it could be assumed that Plaintiff satisfies any of these elements, he fails to direct due process arguments specifically to the Individual Defendants. Accordingly, Plaintiff fails to present a prima facie case that personal jurisdiction over the Individual Defendants would be proper under Section 302(a)(3).

### 4.  Jurisdictional Discovery

Plaintiff asserts that "should the Court conclude that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record, Plaintiff request [sic] this Court to order discovery." Pl. MOL at 14.  Defendants oppose the request for jurisdictional discovery. *See* Reply, p. 10, n. 5.

"'District courts have broad discretion to decide whether to allow jurisdictional discovery and, if so, to what extent.'" *Lear,* 2021 WL 1299489, at *11 (quoting *In re MS Angeln GmbH & Co. KG*, No. 10 Civ. 4820 (GBD), 2012 WL 1080300, at *7 (S.D.N.Y. Mar. 29, 2012), in turn citing *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009) and *Lehigh Valley Indus., Inc. v. Birenhaum*, 527 F.2d 87, 93 (2d Cir. 1975)).  "In light of that discretion, the Second Circuit has repeatedly affirmed denials of jurisdictional discovery where the plaintiffs failed to demonstrate a prima facie case for personal jurisdiction over the defendants." *Id.* (citing *Best Van Lines*, 490 F.3d at 255 (concluding that district court was "well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the Jazinis did not establish a prima facie case that the district court had jurisdiction over Nissan Japan, the district court did not err in denying discovery on that issue.")).

Under the circumstances, and because Plaintiff's conclusory request for jurisdictional discovery appears to seek an unwarranted fishing expedition, Plaintiff's request for jurisdictional discovery is denied.

### b. Fed. R. Civ. P. 12(b)(6) Motion

#### 1. Standard of Review

On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S.

31

662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Id.*, at 679 (cleaned up).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [Plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007)(quoting *Twombly*, 550 U.S. at 570). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Id.* (citing Twombly, 550 U.S. at 555).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted).  When a plaintiff proceeds *pro se*, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018), including "factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

"The Court is obligated to construe *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest." *Daniels v. Kijakazi*, No. 22-CV-6297 (LJL), 2023 WL 3901987, at *3 (S.D.N.Y. June 8, 2023)(citing *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). "However, this does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to 'nudg[e] their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure." *Id.* (citing *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007)).

A court "may not properly dismiss a [claim] that states a plausible version of the events merely because the court finds that a different version is more plausible."

33

*Anderson News*, 680 F.3d at 185.  "The role of the court at this stage of the proceedings is . . . merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed."  *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016).

### 2.  Analysis

### Individual Defendants

All claims against Turnbull, Stroud, and LeDuigou are dismissed without prejudice because the Court lacks personal jurisdiction over them.

### Count I

In Count I, Plaintiff alleges that Defendants violated New York Human Rights Law ("NYHRL") § 296(15) by denying him employment based on his 1991 felony conviction and without first undertaking a proper evaluation under Article 23-A of the N.Y. Correction Law. *See* FAC ¶¶ 63-64, 66.  NYHRL § 296(15) makes it unlawful to deny employment to an individual "by reason of his having been convicted of one or more criminal offenses ... when such denial is in violation of the provisions of [Article 23-A] of the N.Y. Correction Law." N.Y. Exec. Law § 296(15).  Article 23-A provides that employment shall not be "denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses" unless: "(1) there is a direct relationship between one or more of the previous criminal offenses and the . . . employment sought or held by the individual; or (2) the . . .  granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Correct. Law § 752.

Courts consider NYSHRL employment discrimination claims using the *McDonnell Douglas* three-part burden shifting framework used in Title VII cases. *Franklin v. Whole*

*Foods Mkt. Grp., Inc.*, No. 20-CV-4935 (VEC), 2022 WL 256460, at *4 (S.D.N.Y. Jan. 26, 2022)(citing *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016)); *see id.* ("Courts apply this framework to NYSHRL criminal history discrimination claims even though criminal history is not a protected category under Title VII.") (collecting cases).  Pursuant to the *McDonnell Douglas* burden shifting framework, a plaintiff must first present a *prima facie* case of discrimination "by establishing (1) that he belongs to a protected class; (2) that he is qualified or competent to perform the job; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Id.* (citing *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 252 (2d Cir. 2014), in turn citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). Courts in the Second Circuit "have characterized the evidence necessary to satisfy" a *prima facie* case under the *McDonnell Douglas* framework "as 'minimal' and '*de minimis*.'" *Zimmerman v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir. 2001) (quoting *Byrnie v. Town of Cromwell,* 243 F.3d 93, 101 (2d Cir. 2001)). "However, '[t]o survive a motion to dismiss, the plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas* prima facie case, but the facts alleged must give 'plausible support to the reduced requirements' of the prima facie case.'" *Ingram v. Nassau Health Care Corp.*, No. 17CV05556JMASIL, 2019 WL 1332857, at *3 (E.D.N.Y. Mar. 25, 2019)(quoting *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *5 (E.D.N.Y. Sept. 21, 2015), in turn quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015), and citing *Dawson v. New York City Transit Auth*., 624 Fed. App'x 763, 767 (2d Cir. 2015) ("We apply [the *Littlejohn*]

standard in reviewing the district court's dismissal of [p]laintiff's ADA complaint.")).

"Thus, while a plaintiff need not allege specific facts establishing all the elements of a

prima facie case under *McDonnell Douglas*, these elements can still 'provide an outline

of what is necessary to render [a plaintiff's employment discrimination] claims for relief

plausible.'" *Id.* (quoting *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378,

389 (E.D.N.Y. Aug. 9, 2016)(additional citation omitted)); *see Nnebe v. City of New*

*York*, No. 22-CIV-3860 (VEC/SLC), 2023 WL 2393920, at *9 (S.D.N.Y. Jan. 30, 2023),

*report and recommendation adopted,* No. 22-CV-3860 (VEC), 2023 WL 2088526

(S.D.N.Y. Feb. 17, 2023)("Although Nnebe need not plead a *prima facie* case of

discrimination to survive a motion to dismiss, she 'must allege sufficient facts showing

that she is entitled to relief.'")(quoting *Bermudez v. City of New York*, 783 F. Supp. 2d

560, 575 (S.D.N.Y. 2011)).

The Court starts with whether Plaintiff has pleaded a plausible claim of

discrimination under § 296(15) against Cameca, the entity with which Plaintiff applied

for the NFSE position.  The allegations in the FAC indicate that that Plaintiff belongs to

the protected class in that he has a 1991 felony conviction that Cameca representatives

discovered, and that he is qualified to perform the NFSE position by virtue of his college

degrees in electronics and electrical engineering, *see* FAC ¶¶ 14-15, his six (6) years of

experience as a Service Engineer, *id*. ¶ 15, and by the fact that he was offered the

NFSE position after interviewing for it.  *Id.* ¶¶ 13, 17-18, 47-48, 51.

By virtue of Plaintiff's allegations that Defendants violated NYHRL § 296(15) by

denying him employment based on his 1991 felony conviction, Plaintiff effectively

alleges a discriminatory failure-to-hire claim.  "To make out a failure-to-hire claim under .

. . the NYSHRL, a plaintiff must demonstrate that: (1) []he is a member of a protected class; (2) []he applied and was qualified for a job for which the employer was seeking applicants; (3) []he was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018)(citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817; *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)); *see Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018)(failure to hire an otherwise competent applicant can, in certain circumstances, amount to an adverse employment action).

The questions presented here are whether Cameca failed to hire Plaintiff for the NFSE position; if so, whether this adverse employment action occurred under circumstances giving rise to an inference of discrimination; and whether the position remained open and the employer continued to seek applicants with Plaintiff's qualifications after Plaintiff was rejected for the position.  Examining these questions in the context of the allegations in the FAC and Plaintiff's memorandum of law, Plaintiff presents a plausible claim of discrimination – although just barely so.

The allegations in the FAC indicate that after Cameca initially rescinded its employment offer after learning of Plaintiff's 1991 felony conviction, it reinstated that offer within twenty-four hours.  Furthermore, Plaintiff's allegations indicate that Cameca representatives contacted Plaintiff about the reinstated employment offer, attempted to address any concerns he had in fulfilling the position, and indicated that Cameca was moving forward with Plaintiff's commencement on August 10, 2020. The Count I claim sounds as if it is based on a "speculative future adverse action" theory similar to that

rejected by the Seventh Circuit. *See Aziyz*, 2022 WL 354444, at *2 ("speculative future adverse action is not adverse action").

However, accepting as true (as the Court must on this motion) that Cameca representatives did not provide Plaintiff the necessary apparatuses to participate in the orientation and effectively perform the NFSE position, it is a reasonable inference (although an extremely weak one) that Cameca did not intend to go forward with the position in good faith because of Plaintiff's prior felony conviction. Unlike in his case in Wisconsin, Plaintiff does not assert here that he emailed Turnbull on August 10 rejecting the employment offer, and the parties have not provided the Court with Plaintiff's amended complaint in that action.  While perhaps artful pleading by Plaintiff to avoid the fate of the Wisconsin action, the Court is not prepared at this time to take judicial notice of Plaintiff's allegations in the Wisconsin case inasmuch as the Wisconsin pleading has not been provided to the Court. *Cf. Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)("The Appellants submitted a copy of the Midway complaint to the District Court in their papers in opposition to the motion to dismiss. GT and its officers do not dispute the authenticity of the Midway complaint and further agree that the Midway complaint was filed on or after January 22, 1999. Pursuant to Fed. R. Evid. 201(b), we take judicial notice of the Midway complaint as a public record."); *Diaz v. Johnson & Johnson*, 2021 WL 3087633, at *5 n.1 (W.D.N.Y. July 22, 2021) (taking judicial notice of complaint and request for and entry of dismissal of action filed in California court, which were attached to the defendant's motion to dismiss pursuant to Rule 12(b)(6)); *5–Star Management, Inc. v. Rogers,* 940 F. Supp. 512, 518 (E.D.N.Y.1996) (taking judicial notice of pleadings in other lawsuits attached to defendants' motion to dismiss).

Further, Plaintiff asserts in a footnote in his memorandum of law: "In this earlier suit, Plaintiff's allegations were a grave misrepresentation of the facts, and the district court used Plaintiff's allegation against him to grant Defendants [sic] motion to dismiss under Rule 12(b)(6). However, [t]he district court did not prove true any allegations of the Plaintiff in the granting of Defendants' motion to dismiss. Plaintiff recant [sic] and separate [sic] himself from any allegations that is [sic] not supported by this First Amended Complaint in this Court."  Pl. Opp. Mem. L., Dkt. No.  33-1 ("Pl. MOL"), at 1, n. 1. The Court fails to see how Plaintiff's allegations in the prior action "were a grave misrepresentation of the facts" inasmuch as Plaintiff seemingly made these allegations. Moreover, the District Court in Wisconsin did not need to "prove true" Plaintiff's allegations but rather accepted those allegations as true for purposes of the motion. Nevertheless, the Court will decide the instant motion on the pleadings in this case.

On the current record, the Court is left with the allegations that LeDuigou was angry because Plaintiff did not reveal his criminal history, "Defendants conceded their action [sic] were discriminatory," Pl. MOL at 1, LeDuigou refused to meet with Plaintiff to discuss his concerns about rumors that some Cameca employees did not want to work with Plaintiff because of his felony conviction, and the apparatuses necessary for Plaintiff to participate in the orientation and fulfill his duties did not show up at his residence by August 10, 2020 as promised by LeDuigou and Stroud.  Despite not alleging that the employer continued to seek applicants for the NFSE position, that is a reasonable inference here. *See 'Aziyz*, 2021 WL 3471583, at *2 (After Plaintiff indicated that "he did not intend to join Cameca because it had not assured him that he would not be a target of retaliation or that the job offer was in good faith, . . . Cameca then

allegedly filled the Field Service Engineer job with someone who was sufficiently younger than" Aziyz."). In the end, Plaintiff has stated a plausible claim of discrimination under NYHRL § 296(15) against Cameca.

Defendants dispute whether Plaintiff may bring a NYHRL § 296(15) claim against Ametek because that entity was not Plaintiff's direct prospective employer. "In *Griffin v. Sirva, Inc.*, the New York Court of Appeals adopted a four-factor test to determine whether an entity is an individual's direct employer." *Franklin,* 2022 WL 256460, at *3 (citing *Griffin v. Sirva, Inc.*, 29 N.Y.3d 174 (2017)).  The four factors are: "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct." *Griffin*, 29 N.Y. 3d at 186 (quoting *State Div. of Hum. Rts. v. GTE Corp.*, 109 A.D.2d 1082, 1083 (4th Dep't 1985) (internal quotation marks omitted)). The *Griffin* Court stated that the "greatest emphasis [is] placed on the alleged employer's power 'to order and control' the employee in his or her performance of work." *Griffin*, 29 N.Y.3d at 186–87.

Plaintiff argues that "Ametek would have controlled every aspect of Plaintiff's employment including but not limited to, hiring and termination of Plaintiff, the Work Opportunity Tax Credit, the Employee Information Form, Direct Deposit (salary), Offer Letters, SharePoint, New Employee Orientation, and the Code of Ethics and Business Conduct (Ametek Handbook)." Pl. MOL at 17-18 (citing FAC at ¶¶ 44-47, 56-59). Although Plaintiff's allegations are largely conclusory, he has alleged enough to plausibly establish that Ametek would have had sufficient control over Cameca's employees that Ametek could be considered Plaintiff's employer alongside Cameca. *See Franklin*, 2022 WL 256460, at *4 ("In short, while he may have a very tough row to

hoe on this point at the summary judgment stage, Franklin has pled adequately,
although just barely, that Amazon and Whole Foods were prospective employers.").
Defendants' motion on this ground is denied.

**Count II**

In Count II, Plaintiff alleges a breach of contract clam arising from his job offer.
Plaintiff asserts, essentially, that Cameca's job offer, which he accepted and relied
upon, required Cameca to provide him by August 10, 2020 the apparatuses necessary
to participate in his orientation and perform the NFSE job functions. *See* FAC ¶¶ 68-
88. But, he contends, Cameca breached the agreement by failing to provide the
apparatuses by this time, thereby denying Plaintiff employment. *Id.* Even accepting as
true all of Plaintiff's allegations, he fails to present a legally viable breach of contract
claim in Count II.

"Under New York law, for a successful breach of contract claim, a plaintiff
must show (1) the formation of an agreement, (2) performance by one party, (3)
breach of the agreement by the other, and (4) damages." *Anders v. Verizon
Commc'ns Inc.*, No. 16-CV-5654 (VSB), 2018 WL 2727883, at *8 (S.D.N.Y. June 5,
2018)(citing *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); *see
Icahn v. Lions Gate Ent. Corp.*, 929 N.Y.S.2d 200 (N.Y. Sup. Ct. 2011)(Under New York
law, a claim for breach of contract requires: (i) the existence of a contract; (ii) breach by
the other party; and (iii) damages suffered as a result of the breach.). While Plaintiff's
allegations plausibly indicate that Plaintiff and Cameca entered an employment
agreement, these same allegations are insufficient to establish an actionable breach of
contract claim.

41

"A sufficient pleading for breach of contract must, 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.'" *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 286 (S.D.N.Y. 1991)).  "New York courts require plaintiffs to 'plead the provisions of the contract upon which the claim is based'—in other words, 'a complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated.'" *Anders*, 2018 WL 2727883, at *8  (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, No. 91 Civ. 1816 (MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993), and citing *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 514 N.Y.S.2d 1002, 1003 (3d Dep't 1987) ("In an action to recover damages for breach of contract, the complaint must ... set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract.")).

Plaintiff alleges Cameca "declared in writing to [him]" a job offer, which he accepted by signing and returning the job offer. FAC, ¶¶ 69, 71, 76.  He further alleges he was to receive certain benefits, such as a salary, vehicle, and paid time off. *Id.* at ¶ 74.  Critically, however, he does not allege he was offered employment for any fixed duration.  As such, the employment offer was for at-will employment. *See Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 314 (S.D.N.Y. 2005)(because plaintiff made no allegation he had a contract specifying a time period for his employment, the court presumed him to be an at-will employee for purposes of Rule 12(b)(6)); *see also Minovici v. Belkin BV*, 971 N.Y.S.2d 103, 108 (NY App. Div. 2013)("New York

adheres to the traditional common-law rule that absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.")(internal quotation marks and citations omitted); *Myers v. Coradian Corp.*, 459 N.Y.S.2d 929, 930 (N.Y. App. Div. 1983)("Nearly a century ago the Court of Appeals ruled that without some form of contractual agreement establishing a durational period, employment is terminable at will by either the employer or the employee, and neither has a cause of action against the other based on the termination of employment. That principle is still being applied by the courts of this State.")(citations omitted). "When there is an at-will employment relationship, the employer may unilaterally alter the terms of employment, and the employee may end the employment if the new terms are unacceptable." *Minovici*, 971 N.Y.S.2d at 108 (citations omitted)).

Even assuming Plaintiff failed to timely receive the apparatuses necessary for him to participate in orientation and perform the NFSE's functions, the employer was free to unilaterally alter the terms of employment. The failure to timely provide Plaintiff with the agreed-upon apparatuses, even if done because of Plaintiff's criminal history, does not amount to an actionable breach of contract in this prospective at-will employment situation. Accordingly, Defendants' motion to dismiss Count II is granted. Plaintiff is free to move for leave to amend this cause of action if he can assert in good faith facts indicating that the prospective employment relationship was for a fixed duration, or some other basis in the purported contract limiting the employer's discretion to change the terms of the agreed-upon employment relationship. *Cf. De Petris v. Union Settlement Assoc.,* 86 N.Y.2d 406, 633 N.Y.S.2d 274, 276, 657 N.E.2d 269 (N.Y. 1995)("An employee may recover ... by establishing that the employer made the

employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment.").

**Count III**

In Count III, Plaintiff asserts a claim of promissory estoppel. *See* FAC ¶¶ 89-104. He contends that Cameca "declared in writing" a job offer to him, *id.* ¶ 90, and "Defendants represented, promised and implied in writing that Plaintiff would be provided with the required" apparatuses to participate in his orientation and perform the NFSE functions. *Id.* ¶ 91. He alleges that "Defendants declared the job offer, and made these representations, in such a manner as to manifest its [sic] willingness to enter into a contract with Plaintiff," *id.*, ¶ 93, that he "assented to Defendants [sic] job offer and promises when he signed and returned the job offer, and satisfactory [sic] passed/completed all the contingencies outlined in the job offer," *id.*, ¶ 94, but that:

> Defendants failed in their promise when they breached the at-will relationship in the commission of a statutory [sic] prohibited act. Defendants' act of denying Plaintiff the required apparatus to report to orientation, work, and the opportunity to satisfactory [sic] perform is [sic] duty as the Northeast Field Service Engineer, solely based on Plaintiff having a criminal history, denied Plaintiff employment in violation of NYSHRL, and Tort Laws.

*Id.* ¶ 95.

Under New York law, promissory estoppel requires (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise. *Haier Am. Trading, LLC, Co.*, No. 1:17-CV-921 (TJM/CFH), 2018 WL 4288617, at *17 (N.D.N.Y. Sept. 7, 2018)(citations omitted).  As Defendants argue, it is unclear what promise Defendants failed to live up to.  As drafted, the claim could be based on Cameca's promise of

employment as contained in the job offer, *see* FAC ¶ 27, Stroud's promise to provide

Plaintiff with the apparatuses necessary to go forward with the NFSE position, *see* FAC

¶ 31, LeDuigou's promise to provide Plaintiff with these apparatuses, *see* FAC ¶ 32, or

a combination of all these promises.  If it is the latter, which it appears to be, then the

claim could be dismissed as duplicative of the claims set forth in Counts I and II.

However, the Court need not base its determination on the ambiguity in Plaintiff's

pleading because there are other reasons to dismiss Count III.

Promissory estoppel is only applicable in the absence of an enforceable contract.

*Doe v. Syracuse Univ.*, No. 5:19-CV-1467 (TJM/ATB), 2020 WL 2513691, at *12

(N.D.N.Y. May 15, 2020). Here, the Court finds the existence of a contract, but

concludes that Plaintiff has not sufficiently alleged that a breach occurred. Count III may

be dismissed on this basis.

 Further, "since the plaintiff was offered only at-will employment, []he cannot

establish reasonable reliance, a necessary element to recover damages on theories of

fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel."

*Marino v. Oakwood Care Ctr.*, 774 N.Y.S.2d 562, 563 (N.Y. App. Div. 2004)(collecting

cases); *see also Guido v. Orange Reg'l Med. Ctr.*, 958 N.Y.S.2d 195, 199 (N.Y. App.

Div. 2013)("Where, as here, a plaintiff is offered only at-will employment, he or she will

generally be unable to establish reasonable reliance on a prospective employer's

representations."); *Blodgett v. Siemens Indus., Inc.*, No. 13-CV-3194 (JMAAKT, 2018

WL 385477, at *5 (E.D.N.Y. Jan. 11, 2018) ("It is well-established that at-will employees

cannot reasonably rely on representations supposedly promising them continued

employment in the future."); *Annese v. Sodexo, Inc.*, No. 5:12-CV-412 GLS/TWD, 2012

WL 2571261, at *4 (N.D.N.Y. July 2, 2012) ("an at-will employee can almost never establish that he reasonably relied on a representation of his employer."). Count III may be dismissed on this basis as well.

Based on these considerations, Plaintiff fails to state an actionable promissory estoppel claim.  The Court grants Defendants' motion in this respect and dismisses Count III.  Because it does not appear that Plaintiff could amend his pleading to avoid this conclusion, Count III is dismissed with prejudice.

### Count IV

In Count IV, Plaintiff brings a breach of contract claim asserting, essentially, that when Stroud advised LeDuigou about Plaintiff's 1991 criminal conviction, she breached the terms of the Code causing Plaintiff injuries and damage. *See* FAC, ¶¶ 105-129.  As an initial matter, Defendants argue that even if the Code can be deemed an enforceable contract (which Defendants argue it cannot), it was between Plaintiff and Cameca – not between Plaintiff and Ametek or the Individual Defendants.  *See* Def. Br. at 19.  Plaintiff does not address this specific issue, *see* Pl. Br. at 23-26, and the FAC is relatively ambiguous on this issue.  The FCA alleges that Ametek promulgated the Code, *see* FAC ¶¶ 107, 110, 120-121; that the Code was issued to Plaintiff through Cameca's Human Resource Department, FAC ¶¶ 108, 115, 122; that Stroud breached the Code, FAC ¶¶ 128-129; and that in doing so Stroud acted in contravention of an unidentified entities' contract. *See, e.g.,*  FAC ¶ 123 ("Stroud breached its [sic] contract with Plaintiff by its [sic] failure to follow its [sic] own practices, policies and procedures with regard to the terms and conditions of Plaintiff's employment as set forth herein."), FAC ¶ 124 ("Stroud intentionally, willfully and/or maliciously breached its [sic] contract with

Plaintiff."), FAC ¶ 125 ("Defendants expected and/or should have reasonably expected Plaintiff to rely on the aforementioned policies and procedures as a commitment by Defendants to follow and abide by them.").  Even liberally construing the allegations in the FAC, and given Plaintiff's lack of opposition on the issue, the Court will deem the Code to be between Plaintiff and Cameca - Plaintiff's prospective employer that issued Plaintiff the Code.  The Court will consider any actions by Stroud to have been taken on Cameca's behalf.

To establish that an employment policy creates a binding contract, an employee must prove that (1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment.  *Baron v. Port Auth. of New York & New Jersey*, 271 F.3d 81, 85 (2d Cir. 2001) (affirming dismissal where employment manuals did not limit employer's right of discharge).  "The New York Court of Appeals has admonished that this is a difficult pleading burden, and that routinely issued employee manuals, handbooks and policy statements should not *lightly* be converted into binding employment agreements." *Id*. (cleaned up)(emphasis in *Baron*). "[S]everal rules have been developed by New York courts to honor this admonition." *Id*. at 85, n. 2.  "'Mere existence of a written policy, without the additional elements ..., does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim by the employee against the employer.'" *Id*. (quoting *De Petris v. Union Settlement Ass'n,* 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (N.Y. 1995)). "Similarly, 'oral assurances with only general provisions in the employee manual [are

in]sufficient' to create an implied employment contract." *Id.* (quoting *Skelly v. Visiting Nurse Assoc. of Capital Region Inc.,* 210 A.D.2d 683, 619 N.Y.S.2d 879, 881 (N.Y. App. Div. 1994) (citation omitted)).  "However, '[p]olicies in a personnel manual specifying the employer's practices with respect to the employment relationship ... may become a part of the employment contract' where the employee establishes an express written policy regarding the conduct at issue, the employer made the employee aware of the policy, and the employee detrimentally relied on the policy." *Gordon v. City of New York*, 14-CIV-6115 (JPO/JCF), 2017 WL 908198, at *3 (S.D.N.Y. Mar. 7, 2017)(quoting *Baron*, 271 F.3d at  85)(additional citations omitted).

Defendants argue that Plaintiff does not allege facts establishing that Cameca or Ametek intended the Code to constitute an enforceable contract.  They contend that the "[m]ere existence of a written policy … does not limit an employer's right to discharge an at-will employee or give rise to a legally enforceable claim by the employee against the employer." *De Petris*, 86 N.Y. 2d at 410.  Plaintiff counters that he is "not alleging the Code limits an employer's right to discharge an at-will employee," but rather that "New York State laws prohibits discrimination making it illegal to terminate against an employee on the basis of his criminal history. . . .  Thus, the at-will employment status is not applicable in this cause of action, and this Court should consider Plaintiff's handbook constituting a binding contract." Pl. Br. at 23-24.

Plaintiff's argument is without merit. He improperly conflates New York State antidiscrimination law with the impact that at-will employment has on the ability to establish an actionable breach of contract claim based on representations in an employee manual governing at-will employees. While it is true that New York's

antidiscrimination laws apply to at-will employees, these laws do not circumvent the considerations impacting whether an employee manual gives rise to a legally enforceable contract involving an at-will prospective employee. *See Baron*, 271 F.3d at 85, n. 2; *see also Minovici*, 971 N.Y.S.2d at 108; *Marino*, 774 N.Y.S.2d at 563; *Guido*, 958 N.Y.S.2d at 199; *Blodgett*, 2018 WL 385477, at *5; *Annese*, 2012 WL 2571261, at *4.  Be that as it may, however, Plaintiff presents allegations plausibly establishing that he relied on the terms of the Code in, *inter alia*, resigning from his then-current employment thereby causing him detriment.  This is sufficient to state a plausible claim that the Code constitutes an enforceable contract. *See Gordon,* 2017 WL 908198, at *3.

Even accepting this proposition, however, Plaintiff fails to present a plausible claim that Stroud breached this contract by disclosing Plaintiff's criminal history to LeDuigou. The Code provides in pertinent part: "[E]xcept to the extent legally required, [hiring data], as well as confidential employee data, should not be disclosed to people inside or outside the company who do not have a legitimate work-related need to know." FAC at ¶ 110.  As Defendants argue, Stroud disclosed Plaintiff's a felony conviction which is not "confidential" since it is public record. *See Aziyz v. Tremble*, No. CIV A 5:03CV-412 HL, 2008 WL 282738, at *1 (M.D. Ga. Jan. 31, 2008) (referencing plaintiff's imprisonment in the Department of Corrections).  Further, because LeDuigou was to be Plaintiff's manager and direct supervisor, he had a legitimate, work-related need to know about Plaintiff's criminal history. Plaintiffs' arguments to the contrary are without merit.

The fact that Stroud discovered Plaintiff's criminal history during the hiring process does not, by itself, make it confidential hiring data that could not be disclosed to anyone without a legitimate right to know, as Plaintiff argues. *See* Pl. Br. at 24-25 ("The issue here is about the information Stroud acquired during the hiring process of Plaintiff,

despite what the information was, which made it Plaintiff's hiring data in the possession of Cameca's H.R. department. Thus, Plaintiff's hire [sic] data is employee's confidential data, which Stroud should have not disclosed to anyone who does not have a legitimate work-related need to know."). As indicated, LeDuigou was Plaintiff's prospective manager and thus had a legitimate right to know of this publicly available information.

Further, the provisions of the FCRA did not prevent Stroud from disclosing Plaintiff's 1991 felony conviction to LeDuigou, as Plaintiff argues. *See id.* at 26 ("The FCRA's seven-year lookback period limits how long adverse information can be report [sic] and used for hiring decisions for applications in New York. FCRA is a federal law which all employers must follow. . . . Despite [sic] Plaintiff is not alleging a claim under [FCRA], [FCRA] is a federal law which compel [sic] Defendants to follow. [FCRA] has reasoned no employer is permitted to report adverse information over seven-years [old] and use it for hiring purposes then it is reasonable to believe LeDuigou did not have a legitimate work-related need to know about Plaintiff's 30-yr old felony conviction."). The FCRA provides in pertinent part that "no consumer reporting agency may make any consumer report containing any of the following items of information: . . . (5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(5). Even accepting the allegations in the FAC as true, Stroud was neither acting as a consumer reporting agency, nor disclosed Plaintiff's 1991 felony conviction based on a consumer reporting agency's report. Rather, her information purportedly was based on Stroud's own research. Thus, the FCRA is inapplicable. That being the case, the FCRA's seven-year look back period is inapplicable.

For these reasons, Defendants' motion to dismiss Count IV is granted.  Because it does not appear that Plaintiff could amend his pleading to avoid this conclusion, and because the Wisconsin District Court dismissed Plaintiff's FCRA claim with prejudice, Count IV is dismissed with prejudice.

### Count V

In Count V, Plaintiff contends that Defendants breached the implied covenant of good faith and fair dealing in Plaintiff's contract with the Defendants by failing to provide "all the required apparatus [sic] specifically stated in the job offer and as promised rendered the performance of the contract impossible. In addition, Defendants [sic] acts prevented any accomplished [sic] purpose of the job offer." FAC ¶ 135; *see id.* ¶ 136 ("Defendants [sic] breach of implied covenant is their failure to provide all the required apparatus [sic] for plaintiff to participating [sic] in orientation on August 10, 2020, and satisfactory [sic] performing his duties as the [F]ield Service Engineer.").

> "'Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is a breach of the underlying contract.'" *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)). "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Id.* at 81. Thus, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

*Converse v. State Farm Fire & Cas. Co.*, No. 5:21-CV-457 (TJM/ATB), 2022 WL 976891, at *2 (N.D.N.Y. Mar. 31, 2022).

Plaintiff's claim for "breach of good faith and fair dealings" is based on the same allegations as his breach of contract claims in Counts II and IV.  Because the claim is

based on the same alleged facts as Plaintiff's contract claims, it is duplicative and must be dismissed.

Accordingly, Defendants' motion in this regard is granted and Count V is dismissed.  Because it does not appear that Plaintiff could amend his pleading to avoid this conclusion, Count V is dismissed with prejudice.

### Counts VI and VII

In Count VI, Plaintiff alleges that Turnbull made false representations and promises to him when he communicated with Turnbull "via phone and email, specifically to ask about rumors regarding many employees not wanting to work with Plaintiff because of his criminal history." FAC ¶ 141. Plaintiff contends that Turnbull's representations that the rumors were unfounded, that Cameca was excited about Plaintiff joining the team, that Ametek maintains a working environment that values diversity and protects the right of each employee to fair and equitable treatment, and that any actions that contradict this policy would be subject to corrective action were untrue.  Plaintiff maintains:

> Defendants intentionally concealed material facts from Plaintiff, including, without limitation, that his reinstatement [sic] job was merely pretexted [sic] to establish an at-will relationship only to deny Plaintiff the required apparatus needed for him to perform his job. Defendants concealed their malice [sic] motives, to deny plaintiff employment solely due to his criminal conviction, a statutory [sic] prohibited act. These representations, promises and material omissions were made by Turnbull (on behalf of all Defendants) on or around August 7, 2020.

FAC ¶ 141.  Plaintiff contends that at the time Turnbull made these "false representations and promises of assurances, the Defendants was [sic] in fact engaged in stopping all opportunities for Plaintiff to satisfactory [sic] perform his duties as the Northeast Field Service Engineer, solely due to his criminal conviction." *Id.* ¶ 143.

Plaintiff contends that "Turnbull knew that his representations and promises of assurances were false, made them without belief in their veracity, without intention of fulfilling them and/or with reckless disregard as to their truth," and that Turnbull made these false representations, promises and omissions, "and otherwise concealed material facts, with the intent to induce Plaintiff to accept a position of employment with them." *Id.* ¶ 144. Plaintiff contends that he relied on Turnbull's false representations and promises to his detriment, including resigning from his then-current employment position and foregoing other employment opportunities. *Id.* ¶ 146.  Plaintiff asserts that his reliance on Turnbull's representations "was reasonable under the circumstances, as Turnbull had concealed the true facts from him, and proof of their [sic] contrary intention was unavailable to him." *Id.*

In Count VII, Plaintiff points to Turnbull's August 7, 2020 representations and promises, but contends that at the same time Turnbull made these false representations and promises "Defendants were in the commission of [sic] denying Plaintiff employment because of his criminal history, a statutory [sic] prohibited act." *Id.* ¶ 149. Plaintiff maintains that he suffered damages because he reasonably relied upon Turnbull's false representations and promises. *Id.* ¶¶ 150-55.

Whether Counts VI and VII are claims of fraud, fraudulent inducement, fraudulent concealment, fraudulent misrepresentation, or promissory fraud, they are "variations on the same theme, largely sharing the core elements of fraud claims: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" *Nourieli v. Lemonis*, 20-CV-8233 (JPO), 2021 WL

3475624, at *6 (S.D.N.Y. Aug. 6, 2021)(quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)); *see Junk v. Aon Corp.*, No. 07 Civ. 4640, 2007 U.S. Dist. LEXIS 89741, at *18-19 (S.D.N.Y. Dec. 3, 2007) (Under New York law, to establish a claim for fraudulent inducement or fraud, a plaintiff must successfully allege "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon. The false representation can be either a misrepresentation or the material omission of a fact. Reliance means 'reasonable' reliance.")(citing *Wurtsbaugh v. Banc of America Securities LLC*, No. 05 Civ. 6220, 2006 U.S. Dist. LEXIS 40473, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006)); *Globatex Group, LTD., v. Trends Sportswear, LTD. et al.*, No. 09-CV-235, 2009 U.S. Dist. LEXIS 38302, 2009 WL 1270002, at *6 (E.D.N.Y. May 6, 2009)("To establish a promissory fraud cause of action in New York, a plaintiff must show (1) that there was a material, false representation; (2) made with knowledge of its falsity; (3) an intent to defraud, (4) that plaintiff reasonably relied upon; (5) causing the plaintiff damages.")(citing *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 239 (2d Cir.1999) (collecting cases applying this five-part test)).

Fraud claims must meet Federal Rule of Civil Procedure 9(b)'s requirement to "state with particularity the circumstances constituting fraud." *Nourieli*, 2021 WL 3475624, at *7; *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "[H]azy aspirational statements are not fraud," *Nourieli*, 2021 WL 3475624, at *7 (citing *Sidamonidze v. Kay*, 757 N.Y.S.2d 560, 560 (N.Y. App. Div. 2003)(holding that "mere puffery, opinions of value or future expectations" do not support fraud claim)), and "[t]he

same goes for 'forward-looking statement[s] of opinion.'" *Id.* (quoting *Glidepath Holding B.V. v. Spherion Corp.*, No. 04-CV-9758, 2010 WL 1372553, at *9 (S.D.N.Y. Mar. 26, 2010)). "In order to survive a motion to dismiss, a plaintiff must set out specific facts in his complaint demonstrating that defendants never intended to make good on any of the promises made." *Elite Phys. Services, LLC v. Citicorp Payment Services, Inc.*, 06 CIV. 2447 (BSJ), 2009 WL 10669137, at *6 (S.D.N.Y. Oct. 9, 2009)(citation omitted).

Even accepting Plaintiff's non-conclusory allegations as true, Turnbull's statements and promises that Plaintiff would have a positive work environment and that any negative conduct related to Plaintiff's prior conviction would be dealt with appropriately are aspirational statements and forward-looking opinions. They do not amount to actionable fraud.  Further, Plaintiff fails to provide specific facts demonstrating that Turnbull never intended to make good on any of his promises. While Plaintiff speculates that Turnbull's promises were false because Plaintiff did not receive the necessary work apparatuses by his start date, the FAC indicates that it was Stroud and LeDuigou who advised Plaintiff he would receive these apparatuses-not Turnbull.  Moreover, Plaintiff contends that it was Stroud and LeDuigou who "planned the withdrawal of Plaintiff's job offer solely due to Plaintiff's criminal conviction." FAC ¶ 40.  Plaintiff's attempt to link Turnbull's promises with the failure to provide Plaintiff with the necessary work apparatuses by his start date amounts to a threadbare recital of the elements of a cause of action for fraud supported by mere conclusory statements, which is insufficient to withstand a motion to dismiss. *See Haier*, 2018 WL 4288617, at *3 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")(quoting *Iqbal*, 556 U.S. at 678).

Moreover, assuming, *arguendo*, that Turnbull could be plausibly linked to the failure to timely deliver the work apparatuses by virtue of his position as Cameca's Vice President for Human Resources, the fraud claims in Counts VI and VII will be dismissed because these claims are redundant of Plaintiff's Count II breach of contract claim. "'[U]nder New York law, 'where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.'" *Telecom Intern. America, Ltd. v. AT & T Corp.,* 280 F.3d 175, 196 (2d Cir. 2001) (quoting *Sudul v. Computer Outsourcing Servs.,* 868 F. Supp. 59, 62 (S.D.N.Y.1994)); *see Four Star Capital Corp. v. Nynex Corp.,* 183 F.R.D. 91, 109 (S.D.N.Y.1997) ("Under New York law, a claim for common law fraud will not lie if that claim is duplicative of a claim for breach of contract").  "In order to establish a fraud claim in addition to a breach of contract claim, plaintiff must show misrepresentations that are misstatements of material fact or promises with a present, but undisclosed, intent not to perform, not merely promissory statements regarding future acts." *Venables v. Sagona*, 925 N.Y.S.2d 578, 581 (N.Y. App. Div. 2011)(citations omitted). "A cause of action for fraud may be maintained on the basis of allegations that a party made a collateral or extraneous misrepresentation that induced the contract but cannot exist when it arises out of the same facts as the breach of contract claim, with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations."  *Globaltex Group,* 2009 WL 1270002, at *6.  When boiled to their core, Plaintiff's fraud claims are merely that Cameca never intended to fulfill its express

contractual obligation set forth in the job offer, and Plaintiff reaches this conclusion based upon Turnbull's promissory statements regarding future events. This is an insufficient basis to allow the fraud claims to proceed in addition to the Count II breach of contract claim.

Plaintiff also contends that he alleges a plausible negligent misrepresentation claim. The Court does not agree.  "Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  "[T]he alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Id.* at 20-21 (citing *Murray v. Xerox Corp.,* 811 F.2d 118, 123 (2d Cir. 1987)("Promises of future conduct are not actionable as negligent misrepresentations."); *Sheth v. New York Life Ins. Co.,* 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2000) ("The purported misrepresentations relied upon by plaintiffs may not form the basis of a claim for fraudulent and/or negligent misrepresentation since they are conclusory and/or constitute mere puffery, opinions of value or future expectations.")(citations omitted); *Bango v. Naughton,* 184 A.D.2d 961, 963, 584 N.Y.S.2d 942 (N.Y. App. Div.1992) (negligent misrepresentation claim was properly dismissed for failure to state a claim because the alleged representations were "mere expressions of future expectation") (internal quotation and citation omitted);

*Margrove Inc. v. Lincoln First Bank of Rochester,* 54 A.D.2d 1105, 1107, 388 N.Y.S.2d 958 (N.Y. App. Div. 1976) ("The alleged negligent misstatements all relate to promised future conduct, if misstatements they be, and there is a lack of any element of misrepresentation as to an existing material fact so as to come within the doctrine of negligent misrepresentation...."); *Glanzer v. Shepard,* 233 N.Y. 236, 242, 135 N.E. 275 (N.Y. 1922) (Cardozo, *J.*) (holding a defendant liable for a negligent misstatement of material *existing* fact)). Here, even if it can be assumed that a special relationship existed between Plaintiff and Cameca, the alleged misrepresentations by Turnbull about how Plaintiff would be treated if he started in the NFSE position were not factual in nature but rather promissory and related to future events.  Thus, they are insufficient to support a negligent misrepresentation claim.  *See id.*; *see also Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187–88 (2d Cir. 2004)("As in the case of fraud, an alleged misrepresentation must be factual and not 'promissory or related to future events.'")(quoting *Hydro Investors,* 227 F.3d at 20). Further, since Plaintiff was offered only at-will employment, he cannot establish reasonable reliance, a necessary element to recover damages on a theory of negligent misrepresentation. *Marino*, 774 N.Y.S.2d at 563.

For these reasons, Defendants' motion is granted to the extent it is directed to Counts VI and VII, and these counts are dismissed. Because it does not appear that Plaintiff could amend his pleading to avoid this conclusion, Count VI and VII are dismissed with prejudice.

## VI.    CONCLUSION

For the reasons stated above,

- that much of Defendants' motion (Dkt. No. 31) brought pursuant to Fed. R. Civ. P. 12(b)(2) is **GRANTED in part** and **DENIED in part**.  This aspect of the motion is granted to the extent that Defendants Turnbull, Stroud, and LeDuigou are dismissed from this action because the Court cannot obtain personal jurisdiction over them. This aspect of the motion is denied as to Defendants Cameca and Ametek.

- that much of Defendants' motion (Dkt. No. 31) brought pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED** in part and **DENIED** in part.  This aspect of the motion is granted to the extent that all claims against Turnbull, Stroud, and LeDuigou are dismissed without prejudice for lack of personal jurisdiction; Count II is dismissed without prejudice to Plaintiff moving for leave to replead this claim; Counts III, IV, V, VI, and VII are dismissed with prejudice, and this aspect of the motion is denied as to Count I.

**IT IS SO ORDERED**.

Dated:  September 18, 2023

Thomas J. McAvoy
Senior, U.S. District Judge