UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NAJIY-ULLAH AZIYZ,

                            Plaintiff,

      v.                                      1:22-cv-579
                                      (ECC/ML)

CAMECA, a Wisconsin Profit Corporation, and
AMETEK, a Pennsylvania Profit Corporation,

                            Defendants.

_____

APPEARANCES:

Naijy-Ullah Aziyz, *pro se* Plaintiff
Alexander L. Reich, Esq., for Defendants

**Elizabeth C. Coombe, United States District Judge:[1]**

### MEMORANDUM-DECISION & ORDER

      Plaintiff Najiy-Ullah Aziyz filed this action alleging employment discrimination in violation of New York law against Defendants Cameca Instruments, Inc. (Cameca), Ametek, Inc. (Ametek) and others.   Dkt. No. 1.   Plaintiff amended the complaint on September 7, 2022. Amended Complaint (Am. Compl.), Dkt. No. 29.   After a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the remaining claim alleges that Cameca and Ametek violated the New York State Human Rights Law, N.Y. Exec. Law § 292 et seq.   Dkt. No. 35.   Presently before

_____

[1] This case was originally assigned to Senior United States District Judge Thomas J. McAvoy and has since been reassigned to the undersigned.

the Court is Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment.   Dkt. Nos. 71, 75.   The motions are fully briefed.   Dkt. Nos. 78, 79, 83.   For the following reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

## I.    FACTS[2]

Cameca is a Wisconsin company and a business unit of Ametek that supplies microanalytical and metrology instruments for research and process control.   Def. SUMF at ¶¶ 1, 2.   Plaintiff has an associate's degree in electronics and computer technology and a bachelor's degree in electrical engineering technology.   Pl. SUMF at ¶ 2.   Plaintiff was also convicted of a felony in 1991.   Def. SUMF at ¶ 10.

In 2020, Plaintiff, who was working for another company, applied for a remote position as a Field Service Engineer at Cameca.   Def. SUMF at ¶¶ 11, 12.   After interviewing with Fabrice LeDuigou, Cameca's North American Support Manager, Cameca offered the position to Plaintiff in July 2020, and Plaintiff accepted.   *Id.* at ¶¶ 13, 15.   On July 30, 2020, Annie Stroud, Cameca's Human Resources Manager, called Plaintiff and told him that the company would mail him his computer and phone.   Pl. SUMF ¶ 12.   The parties dispute whether Stroud told him that the equipment would be provided "for participation in orientation" and "reporting in to work."   Def. Resp. ¶ 12.

On July 27, 2020, LeDuigou emailed Plaintiff that "[d]ue to Covid 19 travel is a bit challenging and everything takes much longer than excepted" and that "[w]e will be providing you

---

[2] The facts are drawn from the parties' submissions, including the Defendants' Statement of Material Facts, Dkt. No. 71-2 (Def. SUMF), Plaintiff's Statement of Material Facts, Dkt. No. 75-2 (Pl. SUMF); Defendants' Response to Plaintiff's Statement of Material Facts, Dkt. No. 78 (Def. Resp.); Plaintiff's Opposition to Defendants' Statements of Material Facts, Dkt. No. 75-5 (Pl. Resp.); and the attached exhibits.   Disputed facts are noted.

with a cell phone." Dkt. No. 71-5 at 62. Plaintiff's start date was scheduled for August 10, 2020. Def. SUMF at ¶ 18.

LeDuigou later learned about Plaintiff's conviction, and on August 4, 2020, he emailed Stroud, "Should we be concerned? How come the head hunter didn't say anything to us? Can we run a more thorough background check? I don't know what he was in prison for. The link to the case is about his rights to wear a religious head cover." Dkt. No. 75-7 at 19. He concluded, "not sure what our recourse is here but some more background work is needed before he starts." Dkt. No. 75-7 at 19. The next day, Stroud responded about what she was "doing based on attorney's feedback," explained that she planned to wait until the next day to call Plaintiff, and stated that they could "then regroup to discuss." *Id.* at 16. LeDuigou replied, "[t]he problem is that we're dealing with Federal laboratories and also companies that require us to swear that our employees haven't been guilty of a felony." *Id.* LeDuigou "wish[ed] we had found this earlier." *Id.* He also wrote, "But what could happen if we rescind the offer? There is a risk that people will leave when they hear of him . . . and we know they will . . . ." *Id.*

On August 6, 2020, Stroud called Plaintiff to tell him that LeDuigou was aware of the conviction. Def. SUMF at ¶ 20. According to Plaintiff, Stroud told him that "LeDuigou was upset," and "Cameca was rescinding his job offer." Pl. Resp. at ¶¶ 20, 35; *see also* Pl. SUMF at ¶ 24; Naijy-Ullah Aziyz Deposition (Aziyz Dep.), Dkt. No. 75-13 at 59;[3] *id.* at 124:13-16 (Stroud said, "that she's rescinding the job offer because of the felony conviction and that they will be putting the preparations on hold."); *id.* at 124:25-125:6 ("I do remember what she stated about rescinding the job offer because of the conviction, that the preparations for the job offer will be put on hold until she contact the corporate office."). According to Defendants, Stroud told Plaintiff

---

[3] Citations to Plaintiff's Deposition are to the deposition page numbers.

that "Cameca was putting his onboarding on hold, and they might need to push back his start date." Def. SUMF ¶ 20.

The parties agree that Stroud called Plaintiff the next day and told him that Cameca planned to move forward with Plaintiff's "job offer and onboarding." Def. SUMF at ¶ 21. The same day, August 7, 2020, Plaintiff asked to talk to LeDuigou, who would be his supervisor. Def. SUMF at ¶¶ 22-23; Dkt. No. 75-7 at 20. Later that day, Plaintiff spoke to Steven Turnbull, Cameca's Vice President of Human Resources who confirmed that Cameca was moving forward with his onboarding. Def. SUMF ¶ 23.

After the conversation, Turnbull sent Plaintiff an email stating:

Thank you for the phone call today. As discussed, we look forward to you starting your employment with Cameca on Monday, August 10, 2020. I provided you with my email and phone number on the call but it is below for your convenience. We are excited about you joining the Cameca Team!

Def. SUMF at ¶ 24. On August 7, 2020, Plaintiff withdrew his resignation from his current employer. Def. SUMF at ¶ 25.

On August 8, 2020, Plaintiff responded that he "would love to be part of the Cameca team," but after consulting with an attorney, he was

advised to ask how you can ensure that I will not be targeted by [LeDuigou], since he allegedly did the internet search and became upset with his findings, or any other employees. Is Fabrice the only manager that I can work with? Is this the only department I can work in? Moreover, how can you ensure this job offer is in good faith[?]

Def. SUMF at ¶ 26.

The next day, Turnbull responded, "We are looking forward to having you joining the Cameca Team;" "AMETEK maintains a working environment that values diversity and protects the right of each employee to fair and equitable treatment;" and "we strive to provide equal employment and advancement opportunities for all qualified people." Def. SUMF at ¶ 27. In

4

addition, Turnbull stated that LeDuigou had been reminded of those policies and he "confirmed continued compliance with the referenced policies." *Id.* Finally, Turnbull stated, "Our good faith and commitment to the Code of Ethics is evidenced by our decision to move forward to hire you after being informed of your past criminal convictions." *Id.* Plaintiff testified that on August 9, 2020, he "understood" that Defendants "were still offering [him] a job." *Id.* at ¶ 28.

Plaintiff did not respond to that message, and on August 10, 2020 at 6:55 a.m., Turnbull emailed him, "'Just following up this morning to ensure you got my response and to understand whether you intend to report in today." Def. SUMF at ¶¶ 29-30. Plaintiff testified that when he received this email, he understood that Cameca had still extended the job offer, and he had still accepted it. *Id.* at ¶ 31 and Aziyz Dep. at 98:2-8 (Q. So again, you understood that they had extended you a job offer; right? A. Yes, and I still accepted. Q. My question was, you understood that they had still extended you a job offer; right? A. Yes, and I still accepted it.").

Plaintiff responded:

Good morning. Yes, I did receive your email Saturday, and I understand that you cannot ensure me that I will not be a target of retaliation. You cannot ensure me that this job offer is in good faith. The only reason you have extended an offer is because that is the advice of your legal team. Mr. Steven a terrible wrong has been done and I'm deeply hurt and offended by it. With that being said, I do not intend to report.

Def. SUMF at ¶ 32.

At the time, Plaintiff had not received a phone or laptop from Cameca. Def. SUMF at ¶ 40, Def. Resp. at ¶ 28. Plaintiff asserts that he needed this equipment to begin work, while Defendants take the position that new hires were expected to use their personal devices until they received company devices and that it was not "uncommon" for new employees to receive their company devices after their start date. *Compare* Pl. SUMF at ¶¶ 12, 19 *with* Def. Resp. at ¶¶ 12, 19. Plaintiff also asserts that Stroud and LeDuigou stopped the delivery of the company devices,

5

and Turnbull did not authorize an order for the company devices, while Defendants respond that none of them had the authority to order or stop the equipment. *Compare* Pl. SUMF at ¶¶ 22, 32 *with* Def. Resp. at ¶¶ 22, 32.

Turnbull responded, "We are disappointed that you have decided not to join Cameca. We were fully committed to you being successful. We wish you the best." Def. SUMF at ¶ 34. Plaintiff never responded. Def. SUMF at ¶ 36. Defendants eventually hired Rick Garcia for the position. Pl. SUMF at ¶ 51.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) swearing under penalty of perjury, that "Corporate offered the position to me, but the offer was not made in good faith," and "[a]s a result, I was forced to decline the position." Def. SUMF at ¶ 37; Dkt. No. 71-5 at 66. He also filed a lawsuit in the United States District Court for the Western District of Wisconsin in 2020 alleging that on August 10, 20202, he "reject[ed]' Defendant Cameca 'Bad Faith' job offer." Def. SUMF at ¶ 38, Dkt. No. 71-5 at 84. Specifically, he claimed that Cameca violated Title VII (disparate age and race discrimination), the Fair Credit Reporting Act, and Wisconsin law. The district court dismissed that complaint for failure to state a claim, and the Seventh Circuit Court of Appeals affirmed. *Id.* at ¶ 39. *Aziyz v. Cameca, Inc.,* 2022 WL 354444 (7th Cir. 2022), *Aziyz v. Cameca, Inc.,* No. 20-cv-896, 2021 WL 3471583 (W.D.Wis. Aug. 6, 2021).

## III.  STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the

initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory

allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Emp. & Rest. Emp. Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal quotation marks omitted)).

When a plaintiff is proceeding pro se, the court "reads his pleadings 'liberally and interpret[s] them to raise the strongest arguments that they suggest.'" *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999)). The "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*.

## III.  DISCUSSION

Plaintiff claims that "Defendants violated the NYSHRL when they denied employment to plaintiff on the basis of his criminal history." Am. Compl. ¶ 63. Defendants seek summary judgment on this claim because Plaintiff cannot establish that there was an adverse employment action given that Plaintiff "repeatedly admitted under oath" that "Camera offered him a job that *he* rejected." Defendants' Memorandum of Law (Def. MOL), Dkt. No. 71-6 at 13. Plaintiff responds that Defendants "stopped all preparation for Plaintiff's orientation and first day of work because of" his conviction, and he could not start without a company phone and computer. Plaintiff's

Memorandum of Law (Pl. MOL), Dkt. No. 75-4 at 14.  He argues that he did not reject or decline the position, and seeks summary judgment.  *Id.* at 19.

Under the New York State Human Rights Law ("NYSHRL"), it is an "unlawful discriminatory practice" for a "corporation" to "deny . . . employment to any individual by reason of his or her having been convicted of one or more criminal offenses," N.Y. Exec. Law § 296(15), unless "there is a direct relationship between one or more of the previous criminal offenses and the . . . employment sought or held by the individual," or such employment "would involve an unreasonable risk to property or the safety or welfare of specific individuals or the general public," N.Y. Corr. Law, Art. 23A, § 752.

Courts consider NYSHRL criminal history discrimination claims using the *McDonnell Douglas* three-part burden shifting framework applied to Title VII cases "even though criminal history is not a protected category under Title VII."  *Franklin v. Whole Foods Mkt. Grp., Inc.,* No. 20-cv-4935, 2022 WL 256460, at *4 (S.D.N.Y. Jan. 26. 2022) (citing *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016) (additional citations omitted)).  Under the *McDonnell Douglas* test, Plaintiff must first make out a prima facie case of failure to hire by establishing that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications."  *Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018) (citing *McDonnell Douglas*, 411 U.S. at 802); *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)); *see also Harris v. Oscar De La Renta,* No.  20-cv-9235, 2022 WL 540659, at *5 (S.D.N.Y. Feb. 22, 2022) (articulating substantially similar elements) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.,* 580 F.3d 73, 80 (2d Cir. 2009)).  "With respect to the

9

third prong, the Second Circuit has held that a plaintiff must prove that he was 'rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Hollington v. CDM Fed. Programs Corp.,* No. 22-cv-4940, 2023 WL 2457057, at *6 (S.D.N.Y. Mar. 10, 2023) (quoting *Aulicino,* 580 F.3d at 80) (additional quotation omitted).

"[A]n 'essential element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected.'" *Hughes,* 304 F. Supp. 3d at 445 (quoting *Carr v. N. Shore-Long Island Jewish Health Sys.,* No. 14-cv-3257, 2015 WL 4603389, at *3 (E.D.N.Y. July 30, 2015) (citation omitted). In addition, "[t]he relevant employment status inquiry in a failure-to-hire claim is the status of the position an applicant is seeking rather than the current relationship between the applicant and the would-be employer." *Id.* (citing *Suri v. Foxx,* 69 F. Supp. 3d 467, 475–76 (D.N.J. 2014)). The "burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). "If the employer meets its burden, the plaintiff then must prove that the articulated justification is in fact a pretext for discrimination." *Id.* at 95.

Here, even viewing the evidence in the light most favorable to Plaintiff and assuming that Plaintiff offered sufficient evidence for a reasonable jury to conclude that Stroud revoked the offer, there is not sufficient evidence for a reasonable jury to conclude that Plaintiff was rejected. After the alleged revocation, the status of the position was clear: Cameca was still offering Plaintiff the position, and Plaintiff had still accepted it. In fact, the day before Plaintiff was scheduled to start, he "understood" that Defendants "were still offering [him] a job." Def. SUMF ¶ 28, Aziyz Dep. at 96:22-25 ("Q. Here on August 9th you understood they were still offering you a job; correct? A. That is correct."). In addition, the day that Plaintiff was scheduled to start, he understood that Cameca had still extended the job offer, and he had still accepted it. Def. SUMF ¶ 31; Aziyz Dep.

10

at 98:2-8 ("Q. So again, you understood that they had extended you a job offer; right?  A. Yes, and I still accepted."  Q.  My question was, you understood that they had still extended you a job offer; right?  A.  Yes, and I still accepted it.").

As Plaintiff admitted in prior sworn statements, he "decline[d]" and "reject[ed]" the position.  Def. SUMF ¶¶ 37-38.  Those prior sworn statements are consistent with Plaintiff's email stating that he did "not intend to report" particularly given Plaintiff's failure to respond to Turnbull's response that Plaintiff had "decided not to join Cameca."[4]  Id. at ¶¶ 32, 34.  As a result, even viewing the evidence in the light most favorable to Plaintiff, he rejected the position, and there is no adverse employment action.

Plaintiff nevertheless argues that he was forced not to report because Cameca demonstrated a lack of good faith by not providing him with a computer and cell phone before his start date or letting him talk directly to LeDuigou, who would be his supervisor, about his concerns.  Pl. MOL at 16-18. 22.  Regarding the computer and phone, Plaintiff has not offered any evidence or legal authority that Cameca's failure to provide this equipment undermined Plaintiff's understanding that he had accepted the position even after the alleged revocation.[5]  Def. SUMF ¶ 31; Aziyz Dep.

---

[4] Contrary to Plaintiff's argument, he could decline and reject the position without using those words specifically.

[5]  Plaintiff's memorandum of law includes a conclusory sentence seeking sanctions without any argument other than reference to his previous motion for sanctions.  See Pl. MOL at 28 ("Thus, this Court should grant sanctions under Rule 37(e), and any other appropriate relief.").  In addition, in his reply, Plaintiff argues that Defendants "engaged in sanctionable spoilation" because they destroyed "relevant policies governing the usage of personal equipment for work related matters in mid-[S]eptember 2020" even though they "antic[i]pated this litigation as early as September 2020," and he filed his complaint in September 2020.  Reply at 8.

Plaintiff filed a motion for sanctions pursuant to Rule 37(e) at the close of discovery in July 2024, arguing that Defendants destroyed information technology policies and procedures.  Dkt. No. 65.  On August 23, 2024, after a hearing, Magistrate Judge Miroslav Lovric denied that motion.  Dkt. No. 70.  Plaintiff did not appeal Magistrate Judge Lovric's decision.  Given the totality of the

35:2-8 (on the day he was scheduled to report, Plaintiff understood that Cameca had still extended the job offer, and he had still accepted it.).  In addition, Plaintiff has not offered any evidence that he told Cameca that he could not start without that equipment or that he even asked when the equipment would arrive.  Even if he had offered such evidence, however, Plaintiff himself admitted in his EEOC Charge of Discrimination that he "was forced to decline the position," and in his Western District of Wisconsin complaint that "he 'reject[ed]' Defendant Cameca' 'Bad Faith' job offer."  Def. SUMF ¶¶ 37, 38, Dkt. No. 71-5 at 66, 84.  Plaintiff has offered no legal authority for his argument that such evidence would undermine his admissions that he rejected the position.

To the extent that Plaintiff was concerned that he could experience retaliation at Cameca, Turnbull addressed that it detail, Def. SUMF ¶¶ 26, 27, and Plaintiff cites no legal authority for his argument that his concerns about potential future retaliatory conduct could change his admissions that he rejected the position.

In sum, viewing the evidence in the light most favorable to Plaintiff, he has not provided sufficient evidence for a reasonable jury to conclude that there was an adverse employment action because Plaintiff admits that he rejected and denied the position, and his explanations about why he rejected and denied the position do not alter that analysis.  As a result, Defendants' motion for summary judgment is granted.  The Court declines to address Defendants' other grounds for

---

circumstances here—this issue was litigated before the magistrate judge, Plaintiff did not appeal the magistrate judge's decision, and Plaintiff did not provide any explanation for his argument other than reference to his prior motion—the Court denies Plaintiff's motion as untimely.  *See Freedman Normand Friedland, LLP v. Cyrulnik*, No. 21-CV-1746, 2024 WL 2306175, at *1 (S.D.N.Y. May 21, 2024) (denying motion for spoliation sanctions as untimely where magistrate judge previously denied a similar motion made at the conclusion of discovery, and movant never appealed the order nor offered good cause for his delay).

summary judgment and Plaintiff's motion for summary judgment, which is moot because the Court grants Defendants' motion.

## III.    CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** the Defendants' motion for summary judgment, Dkt. No. 71, is hereby **GRANTED**.  The Plaintiff's motion for summary judgment, Dkt. No. 75, is hereby **DENIED**. The Clerk of Court is directed to enter judgment in the Defendants' favor and close the case.

**IT IS SO ORDERED.**

**Dated:** March 24, 2026

Elizabeth C. Coombe
U.S. District Judge

13